MATTER OF DIAZ-CHAMBROT

In Deportation Proceedings

A-13388980

*Decided by Board July 11, 1988*

(1) The effective date of an alien's acquisition of lawful permanent resident status pursuant to section 1 of the Cuban Refugee Adjustment Act of November 2, 1966, Pub. L. No. 89-732, 80 Stat. 1161, is 30 months prior to his application for such adjustment of status, or the date of his last arrival in the United States, whichever date is later.

(2) In consideration of an application for a waiver of excludability under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c) (1982), the Board of Immigration Appeals found the respondent statutorily eligible, concluding that the effective date of his acquisition of lawful permanent resident status was governed by the provisions of the Cuban Refugee Adjustment Act of November 2, 1966; in so holding, the Board modified its decision in *Matter of Carrillo-Gutierrez,* 16 I&N Dec. 429 (BIA 1977), to the extent that it had stated obiter dictum that the retroactivity provisions of the Cuban Refugee Adjustment Act applied solely to residency requirements for naturalization eligibility.

CHARGE:

Order: Act of 1952—Sec. 241(a)(11) [8 U.S.C. § 1251(a)(11)]—Convicted of marihuana violation

ON BEHALF OF RESPONDENT:
Ronald Haber, Esquire
Law Offices of Haber and Roth
1353 Northwest 16th Street
Miami, Florida 33125

ON BEHALF OF SERVICE:
Nancy McCormack
General Attorney

BY: Milhollan, Chairman; Dunne, Morris, Vacca, and Heilman, Board Members

In a decision dated February 28, 1986, an immigration judge found the respondent deportable as charged under section 241(a)(11) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(11) (1982), and concluded that he was statutorily ineligible for asylum, withholding of deportation, suspension of deportation, voluntary departure, and relief under section 212(c) of the Act, 8 U.S.C. § 1182(c) (1982). The respondent has appealed. The record

will be remanded for further proceedings. The request for oral argument before the Board is denied.

The respondent is a native and citizen of Cuba who was initially paroled into the United States on August 13, 1966. His status was subsequently adjusted to that of a lawful permanent resident on November 28, 1979, retroactive to February 23, 1977, pursuant to section 1 of the Cuban Refugee Adjustment Act of November 2, 1966, Pub. L. No. 89-732, 80 Stat. 1161. The record contains a certified true copy of a conviction record which reflects that the respondent was convicted in the State of Florida on January 25, 1982, of trafficking in more than 100 pounds but less than 2,000 pounds of cannabis in violation of Florida Statutes §§ 893.02(2), 893.03(1)(c)(3), and 893.135(1)(a). The respondent was sentenced to prison for a term of 5 years.

We are satisfied from a review of the record that the respondent's deportability under section 241(a)(11) of the Act has been established by evidence which is clear, unequivocal, and convincing as required by *Woodby* v. *INS*, 385 U.S. 276 (1966). On the basis of his 1982 conviction for attempted trafficking in cannabis the respondent is precluded from establishing good moral character, a statutory prerequisite for both suspension of deportation and voluntary departure. *See* sections 244(a)(2) and (e) of the Act, 8 U.S.C. §§ 1254(a)(2) and (e) (1982). Consequently, the immigration judge properly found the respondent ineligible for suspension of deportation and voluntary departure in lieu of deportation. However, we disagree with the immigration judge's additional conclusion that the respondent was ineligible for relief from deportation pursuant to section 212(c) of the Act.

In finding the respondent statutorily ineligible for relief under section 212(c) of the Act, the immigration judge reasoned that the respondent lacked the requisite lawful unrelinquished domicile of 7 consecutive years. He concluded that the respondent acquired his status as a lawful permanent resident on November 28, 1979, the date of his adjustment, and that his status was terminated by the issuance of the Order to Show Cause, Notice of Hearing, and Warrant for Arrest of Alien (Form I-221S) on March 21, 1984.

We agree with the immigration judge's finding that under the controlling authority the respondent's status as a lawful permanent resident ended with the issuance of the Order to Show Cause. *See Marti-Xiques* v. *INS*, 741 F.2d 350 (11th Cir. 1984); *cf. Matter of Lok*, 18 I&N Dec. 101 (BIA 1981). We do not agree, however, with the immigration judge's additional conclusion that the respondent was ineligible for relief from deportation under section 212(c) of the Act because the effective date of his acquisition of that status was

November 28, 1979, when he was granted lawful permanent resident status pursuant to section 1 of the Cuban Refugee Adjustment Act of 1966, and he therefore lacked the requisite 7 years' unrelinquished lawful domicile.

The immigration judge's conclusion that November 28, 1979, is the effective date when the respondent's lawful domicile began for purposes of section 212(c) relief was based on our decision in *Matter of Carrillo-Gutierrez*, 16 I&N Dec. 429 (BIA 1977). We held there that the 5-year period of statutory limitations for rescission proceedings under section 246(a) of the Act, 8 U.S.C. § 1256(a) (1982), runs from the date the application for adjustment was approved and not from the retroactive date permanent residence is acquired pursuant to the Act of November 2, 1966. We also stated, however, that the retroactive provision of the Act of November 2, 1966, was designed merely as a means of allowing the beneficiaries of the legislation to count some of the time spent in the United States in a status other than that of permanent resident towards their resident requirements for naturalization. *Matter of Carrillo-Gutierrez, supra* at 430. After again reviewing the legislative history of the statute, and our previous decisions interpreting its provisions, we withdraw from *Matter of Carrillo-Gutierrez, supra,* insofar as it suggests that the retroactivity provisions of the 1966 Act applied solely to the requirement for acquiring United States citizenship.

We initially note that our reasoning in *Matter of Carrillo-Gutierrez, supra,* is not applicable to the facts here, because rescission proceedings, by their nature, are controlled by the date the application for adjustment of status is approved, since they challenge the alien's statutory eligibility for adjustment of status on that date. The application of the retroactive provisions under the Act of November 2, 1966, to rescission proceedings would have the unnecessary and unintended result of partially or completely eliminating the period in which the Service is authorized to challenge an alien's adjustment of status. The inquiry in rescission proceedings, which is statutorily directed to the date of approval of an adjustment application, is different from that regarding relief under section 212(c) of the Act, which concerns the period of time the alien has maintained a lawful unrelinquished domicile for purposes of relief from deportation.

The respondent's status was adjusted to that of a lawful permanent resident pursuant to section 1 of the 1966 Act, which provides in relevant part that, "[u]pon approval of such an application for adjustment of status, the Attorney General shall create a record of the alien's admission for permanent residence as of a date thirty months prior to the filing of such an application. . . ." Thus,

the plain language of the statute makes no mention of the requirements for citizenship and, instead, speaks specifically of the effective date of the alien's acquisition of lawful permanent resident status.

The legislative history of the 1966 Act does not directly discuss the rationale for the particular language chosen for the retroactive provision of section 1 of the 1966 Act. However, it is clear from the legislative history that language restricting the retroactivity provision solely to the naturalization requirements was considered and not adopted by Congress, which chose instead the broader language in section 1 of the 1966 Act. See H.R. Rep. No. 1978 and Conf. Rep. No. 2334, 89th Cong., 2d Sess., *reprinted in* 1966 U.S. Code Cong. & Ad. News 3792 [hereinafter cited as Reports]. As a result of a 1965 amendment to section 245 of the Act,[1] now repealed,[2] natives of Western Hemisphere countries were precluded from obtaining adjustment of status. As of August 1, 1966, there were 165,000 refugees from Cuba in the United States without lawful permanent resident status. Approximately 81,000 were in parole status, 47,000 were in extended voluntary departure status, and 36,000 more had arrived since the resumption of the Cuban airlift on December 1, 1965, with 4,000 more arriving each month. Reports, *supra,* at 3793. Most of these refugees could have entered the United States as immigrants if normal diplomatic relations between the United States and Cuba had existed.[3] Reports, *supra,* at 3798. However, the only recourse available to Cuban refugees at that time was through United States consular offices abroad, which was both expensive and burdensome to the refugee and to the consular offices in adjacent countries. *Id.* at 3794. The original bill submitted to ameliorate this problem in the House of Representatives provided that the period of time between the alien's last entry into the United States and his adjustment of status would count toward the 5-year residence requirement for United States citizenship. *Id.* at 3800. The bill passed by the Senate provided that the record of the alien's admission would be the date of his last arrival in the United States. *Id.* at 3801. The bill passed by the House of Representatives, instead, adopted the date of approval of the application for adjustment of status as the date of record for lawful admission. *Id.* at 3801-02. The congressional conferees agreed to the language adopted by the Senate with a proviso limiting the retroactivity provision

---

[1] *See* section 13(b) of the Act of Oct. 3, 1965, Pub. L. No. 89-236, 79 Stat. 919.

[2] *See* section 6 of the Act of Oct. 20, 1976, Pub. L. No. 94-571, 90 Stat. 2706.

[3] Cubans at that time qualified for special immigrant status as natives of a Western Hemisphere country under section 101(a)(27) of the 1952 Immigration and Nationality Act, 8 U.S.C. § 1101(a)(27) (1966).

to 30 months prior to the filing of the application for the adjustment application. *Id.* at 3802. Thus, it is clear from this legislative history that Congress considered limiting the effect of the retroactivity provisions to the citizenship requirements but, instead, chose the broader language providing for retroactivity in the effective date of record of lawful admission as a permanent resident. Thus, our dictum in *Matter of Carrillo-Gutierrez, supra,* at 430, stating that the retroactivity provisions of the 1966 Act applied solely to the residence requirements for naturalization was mistaken and is modified in accordance with this opinion. The plain language in the statute refers to the effective date of the record of lawful permanent residence. It is not affected by the rescission provisions of section 246 of the Act which explicitly refer to "five years after the status of a person has been adjusted" as the time limit for initiating rescission proceedings.

The record reflects that the filing date for the respondent's adjustment application was August 23, 1979. Thus the effective date for the respondent's acquisition of lawful permanent residence pursuant to section 1 of the Act of November 2, 1966, was February 23, 1977, approximately 7 years and 1 month prior to the issuance of the Order to Show Cause. We are therefore satisfied that the respondent is statutorily eligible for relief under section 212(c) of the Act, having acquired the requisite 7 years of lawful unrelinquished domicile prior to the issuance of the Order to Show Cause. Accordingly, we will remand the record to the immigration judge in order to afford the respondent an opportunity to apply for relief under section 212(c) of the Act and to have that application considered by the immigration judge. On remand the respondent retains the burden of establishing that he deserves section 212(c) relief as a matter of discretion. *Matter of Buscemi,* 19 I&N Dec. 628 (BIA 1988); *Matter of Marin,* 16 I&N Dec. 581 (BIA 1978). We need not reach at this time the respondent's appeal from the immigration judge's denial of his applications for asylum and relief under section 243(h) of the Act, 8 U.S.C. § 1253(h) (1982).

**ORDER:** The respondent's appeal from the denial of his requests for suspension of deportation and voluntary departure is dismissed.

**FURTHER ORDER:** The respondent's appeal from the denial of his request for relief under section 212(c) of the Act is sustained and the record is remanded to the immigration judge for further proceedings consistent with the foregoing opinion and the entry of a new decision.