# In re Sara Ofelia ROSAS-Ramirez, Respondent

## File A92 125 313 - San Diego

*Decided April 7, 1999*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

An alien whose conviction for an aggravated felony was subsequent to her adjustment of status to that of a lawful permanent resident is deportable under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii) (Supp. II 1996), as an alien who was convicted of an aggravated felony "after admission."

Pro se

Thomas Haine, Assistant District Counsel, for the Immigration and Naturalization Service

Before: Board En Banc: SCHMIDT, Chairman; DUNNE, Vice Chairman; VACCA, HEIL-MAN, HOLMES, HURWITZ, VILLAGELIU, FILPPU, COLE, MATHON, GUENDELSBERGER, JONES, GRANT, and SCIALABBA, Board Members. Concurring and Dissenting Opinion: ROSENBERG, Board Member.

GUENDELSBERGER, Board Member:

The Immigration and Naturalization Service has appealed the Immigration Judge's July 16, 1997, order terminating removal proceedings. We will sustain the appeal, reinstate the removal proceedings, and order the respondent removed from the United States to Mexico.

## I. FACTS

The respondent initially entered the United States without inspection in 1979. In December 1989, her status was adjusted pursuant to section 245A of the Immigration and Nationality Act, 8 U.S.C. § 1255a (1988), to that of "an alien lawfully admitted for permanent residence." Section 245A(b) of the Act. On March 14, 1997, the respondent was convicted under California law of the offense of transportation of a controlled substance. Based on that conviction, the Service instituted removal proceedings in which it charged

the respondent with deportability under section 237(a)(2)(A)(iii) of the Act, 8 U.S.C. § 1227(a)(2)(A)(iii) (Supp. II 1996), as an alien who after admission to the United States has been convicted of an aggravated felony under section 101(a)(43)(B) of the Act, 8 U.S.C. § 1101(a)(43)(B) (1994), for illicit trafficking in a controlled substance.

## II. ISSUE

The issue in this case presents a question of statutory construction that is of first impression: whether a respondent who enters without inspection and then adjusts her status to that of "an alien lawfully admitted to permanent residence" pursuant to section 245A of the Act has accomplished an "admission" to the United States as that term is used in section 237(a)(2)(A)(iii).

## III. ANALYSIS

Section 237(a)(2)(A)(iii) of the Act provides: "Any alien who is convicted of an aggravated felony at any time *after admission* is deportable." (Emphasis added.) The Immigration Judge found that the respondent had not been convicted "after admission" because she had never been "admitted" to the United States within the definition at section 101(a)(13)(A) of the Act, 8 U.S.C. § 1101(a)(13)(A) (Supp. II 1996), which provides:

> The terms "admission" and "admitted" mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer.

On appeal, the Service contends that the Immigration Judge erred by finding that the term "admission" as used in section 237(a)(2)(A)(iii) of the Act encompasses only the process described in section 101(a)(13)(A).

We agree with the Immigration Judge that the respondent's adjustment of status does not meet the literal terms of the definition of "admission" or "admitted" contained in section 101(a)(13)(A). The definition there refers to an entry after inspection and authorization. The respondent in this case did not enter the United States after inspection and authorization by an immigration officer. She entered without inspection and thereafter adjusted her status to that of "an alien lawfully admitted for permanent residence" under section 245A. Although adjustment to permanent resident status under section 245A requires that an alien demonstrate admissibility as an immigrant, and is arguably the equivalent of inspection and authorization by an immigration officer, it is less clear that such a change in status can be

characterized as an "entry" into the United States.[1]

We do not find, however, that reference to the definition of "admission" and "admitted" in section 101(a)(13)(A) adequately answers the question of the intended scope of the term "admission" in section 237(a)(2)(A)(iii). Resolution of this issue requires consideration of the meaning of the phrase "lawfully admitted for permanent residence" in sections 101(a)(13)(C) and (20) of the Act, as well as a review of several statutory provisions enacted by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546 ("IIRIRA"), which govern removal proceedings. *See K-Mart Corporation v. Cartier*, 486 U.S. 281 (1988) (indicating that the language of a statute should be construed with regard to the wording and design of the statute as a whole); *United States v. Hockings*, 129 F.3d 1069, 1071 (9th Cir. 1997) (noting that when interpreting a statute, one must construe the provisions of the entire law, including its object and policy, to ascertain the intent of Congress).

## A. Adjustment of Status and Lawful Admission

Section 101(a)(20) of the Act, 8 U.S.C. § 1101(a)(20) (1994), defines the term "lawfully admitted for permanent residence" as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." Notably, this definition encompasses both admissions to permanent resident status at the border, as defined in section 101(a)(13)(A), and admissions through adjustment to lawful permanent res-

---

[1]In *Matter of Jimenez-Lopez*, 20 I&N Dec. 738 (BIA 1993), the Board held that an alien admitted for lawful temporary residence under section 210 of the Act, 8 U.S.C. § 1160 (1988), who was later paroled into the United States for criminal prosecution and placed in exclusion proceedings, did not subsequently make an "entry" as that term was then defined in section 101(a)(13) of the Act, 8 U.S.C. § 1101(a)(13) (1988), when his status was adjusted to that of a lawful permanent resident under section 210(a)(2). The Board noted that adjustment to permanent resident status under section 210 may occur by default through the mere passage of time after a grant of temporary resident status without any examination for admissibility. The Board determined such an automatic adjustment to permanent resident status could not serve as the equivalent of an inspection and admission by an immigration officer in meeting that aspect of the definition of entry. The Board noted, however, that with respect to the question of "admission" to the United States in the case of adjustment of status under section 245 of the Act, 8 U.S.C. § 1255 (1988 & Supp. IV 1992), "it is well established that an applicant for relief under that provision is 'assimilated' to the position of an alien seeking entry into this country because a grant of such relief is contingent upon a favorable adjudication of the applicant's admissibility under section 212 of the Act." *Id.* at 741. Notably, adjustment of status under section 245A, like adjustment under section 245(a), occurs only after the alien has applied for adjustment and demonstrated that she is "admissible to the United States as an immigrant." Section 245A(b)(1)(C)(i) of the Act.

ident status under various provisions of the Act. The respondent, having been accorded the privilege of residing permanently in the United States as an immigrant in accordance with section 245A of the Act, has been "lawfully admitted for permanent residence" under the definition in section 101(a)(20). The question presented in this case is whether the phrase "after admission" in section 237(a)(2)(A)(iii) includes an alien, such as the respondent, who has been "lawfully admitted for permanent residence" under the definition in section 101(a)(20) pursuant to a grant of adjustment of status. We find that it does.

Our determination that aliens "lawfully admitted for permanent residence" through the adjustment process are considered to have accomplished an "admission" to the United States is supported by the language of the adjustment provisions themselves. Most notably, under the general provision for adjustment of status, the Attorney General is instructed to "record the alien's lawful admission for permanent residence." Section 245(b) of the Act, 8 U.S.C. § 1255(b) (1994). Although adjustment of a legalization applicant under section 245A is not similarly recorded, such an alien is nonetheless characterized as being "lawfully admitted for permanent residence." Section 245A(b)(1) of the Act. Other provisions for adjustment of status to permanent residence also confer upon the applicant the status of "an alien lawfully admitted for permanent residence." *See* sections 209(b) (refugees), 210(a)(2) (special agricultural workers), 244(a) of the Act (suspension of deportation), 8 U.S.C. §§ 1159(b), 1160(a)(2), 1254(a) (1994). The IIRIRA adds an additional provision for cancellation of removal and adjustment of status which confers the status of "an alien lawfully admitted for permanent residence" upon an alien granted such relief. Section 240A(b)(1) of the Act, 8 U.S.C. § 1229b(b)(1) (Supp. II 1996). This provision also instructs the Attorney General to "record the alien's lawful admission for permanent residence" upon cancellation of removal. Section 240A(b)(3) of the Act.

Both before and after enactment of the IIRIRA, admission to permanent resident status occurred through two routes: (1) inspection and authorization at the border and (2) adjustment of status while in the United States. This dual approach to admission to permanent residence is reflected, not only in the two definitions discussed earlier, but also in section 101(a)(13)(C) of the Act, which provides that aliens "lawfully *admitted* for permanent residence . . . shall not be regarded as seeking an admission into the United States for purposes of the immigration laws" except in a number of situations specifically indicated.[2] (Emphasis added.) The directive of

---

[2]Section 101(a)(13)(C) provides:

An alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws unless the alien—

(i) has abandoned or relinquished that status,

section 101(a)(13)(C) regarding the treatment of aliens "lawfully admitted for permanent residence" is consistent with our interpretation that the term "admission" includes those aliens described at section 101(a)(20). In this respect, lawful permanent residents who are returning to the United States are not generally treated as seeking admission because they are treated as having already been admitted in the past.

## B. Impact of IIRIRA Amendments

Examination of the fundamental changes to immigration law enacted by the IIRIRA also provides insight into the meaning of the term "admission." Prior to the IIRIRA, aliens who had not made an "entry" into the United States were alleged to be excludable under the grounds of exclusion set forth in section 212(a) of the Act, 8 U.S.C. § 1182(a) (1994), and were placed in exclusion proceedings. Aliens who had made an "entry" were charged with grounds of deportability under section 241(a) of the Act, 8 U.S.C. § 1251(a) (1994), and were placed in deportation proceedings.

The IIRIRA combines what were separate exclusion and deportation proceedings into a unified removal proceeding. However, the IIRIRA retains the two separate sets of grounds under which aliens may be charged in removal proceedings. Section 237(a), formerly section 241(a), sets out grounds applicable to aliens who have been "admitted to the United States." Section 212(a) of the Act, 8 U.S.C. § 1182(a) (1994 & Supp. II 1996), specifies grounds under which aliens are "ineligible to be admitted to the United States." The IIRIRA adjusts the focus in applying the two categories of grounds for removal by replacing "entry" with "admission" as the criterion which determines whether section 212 or 237 grounds are applicable in removal proceedings. *See* section 101(a)(13)(A) of the Act.

The definition of the term "removable" added by the IIRIRA assigns section 237 grounds to aliens who are "*admitted* to the United States."

---

(ii) has been absent from the United States for a continuous period in excess of 180 days,

(iii) has engaged in illegal activity after having departed the United States,

(iv) has departed from the United States while under legal process seeking removal of the alien from the United States, including removal proceedings under this Act and extradition proceedings,

(v) has committed an offense identified in section 212(a)(2), unless since such offense the alien has been granted relief under section 212(h) or 240A(a), or

(vi) is attempting to enter at a time or place other than as designated by immigration officers or has not been admitted to the United States after inspection and authorization by an immigration officer.

Section 240(e)(2)(B) of the Act (Supp. II 1996) (emphasis added).[3] The very first ground for removal in section 237(a) refers to aliens who were inadmissible "at the time of entry *or adjustment of status*." Section 237(a)(1)(A) of the Act (emphasis added). Section 237 thus appears to recognize that at least some aliens who have adjusted to permanent resident status have been "admitted" to the United States.

The category of aliens most obviously affected by the IIRIRA shift in focus from "entry" to "admission" consists of those who entered without inspection. Under pre-IIRIRA law, such aliens were not subject to the exclusion grounds in section 212(a) because they had already entered the United States and were entitled to deportation proceedings. Following enactment of the IIRIRA, section 212(a)(6)(A)(i) of the Act provides:

> An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible.

Under this provision, aliens who have entered without inspection are, by virtue of that status, rendered inadmissible and, therefore, removable from the United States. *See* section 240(e)(2)(A) of the Act. If the term "admitted," as used in the IIRIRA, does not include those afforded lawful permanent resident status through the adjustment process, they would be relegated to the same situation as entrants without inspection and would face exposure to removal charges under section 212(a)(6)(A)(i) as aliens who have not been admitted or paroled. Such a drastic shift in the treatment of a significant number of permanent resident aliens does not appear to have been intended by the IIRIRA or necessitated by a focus limited to the provisions of section 101(a)(13)(A) of the Act.[4]

---

[3]Section 240(e)(2) of the Act provides: "The term 'removable' means— (A) in the case of an alien not admitted to the United States, that the alien is inadmissible under section 212, or (B) in the case of an alien admitted to the United States, that the alien is deportable under section 237."

[4]The legislative history concerning the significance of revised section 212(a)(6)(A) of the Act indicates that it was intended to have an impact upon the situation of aliens who entered without inspection. *See, e.g.*, H.R. Conf. Rep. No. 104-828, § 301(d), at 208 (1996), ("Joint Explanatory Statement") (explaining that "[t]he current category of persons who are deportable because they have made an entry without inspection will, under the amendments made by section 301(c) of this bill, instead be considered inadmissible under revised paragraph (6)(A) of subsection 212(a)"); *see also* H.R. Rep. No. 104-469, at 226 (1996) (explaining, in regard to the same provision, that "[c]urrently, aliens who have entered without inspection are deportable under section 241(a)(1)(B). Under the new 'admission' doctrine, such aliens will not be considered to have been admitted, and thus, must be subject to a ground of inadmissibility, rather than a ground of deportation, based on their presence without admission. (Deportation grounds will be reserved for aliens who have been admitted to the United States.)").

Notably, both the Joint Explanatory Statement and the Committee Report are silent as

Procedural provisions introduced by the IIRIRA concerning the burden of proof also support a reading of the term "admitted" to include aliens who have adjusted their status to that of an alien lawfully admitted for permanent residence. Section 240(c)(2) of the Act provides:

BURDEN ON ALIEN.—In the proceedings the alien has the burden of establishing—

(A) *if the alien is an applicant for admission*, that the alien is clearly and beyond doubt entitled to be admitted and is not inadmissible under section 212; or

(B) by clear and convincing evidence, that the alien is lawfully present in the United States *pursuant to a prior admission.*

(Emphasis added.)

In order to ascertain the appropriate burden of proof in removal proceedings, the Immigration Judge must determine whether the alien is an "applicant for admission" under section 240(c)(2)(A) of the Act or "lawfully present . . . pursuant to a prior admission" under section 240(c)(2)(B). Whether an alien is an "applicant for admission" is answered by reference to the definition at section 101(a)(13). As noted above, section 101(a)(13)(C) provides that "[a]n alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking admission into the United States for purposes of the immigration laws [except under certain enumerated circumstances]." Because the respondent in this case has been lawfully admitted for permanent residence and is not subject to any of the exceptions, she is not an "applicant for admission" and therefore does not come within the provisions of section 240(c)(2)(A). The statute seems designed to include aliens such as the respondent (i.e., those described in sections 101(a)(13)(C) and (20) as being lawfully admitted for permanent residence) under section 240(c)(2)(B). Under the statutory design, the reference to "prior admission" in section 240(c)(2)(B) includes not only those aliens who have made "admissions" described in section

---

to any intention to apply the provisions for inadmissibility in section 212 to aliens who became permanent residents by the process of adjustment. Aliens who have adjusted to lawful permanent resident status have traditionally been subject to deportation proceedings. Had the respondent's circumstances arisen prior to the enactment of the IIRIRA, she would have been deportable under the pre-IIRIRA version of section 237(a)(2)(A)(iii), then found at section 241(a)(2)(A)(iii), which provided for deportation of any alien convicted of an aggravated felony "after entry." There would have been no question that the respondent was convicted "after entry," since her entry without inspection in 1979 would have met the definition of "entry" then contained in former section 101(a)(13). Neither the amendments made by the IIRIRA nor the legislative history indicates that Congress intended to render "inadmissible" the group of aliens who have adjusted to lawful permanent resident status.

101(a)(13)(A), but also those described in section 101(a)(20).

In the instant case, the respondent was "admitted" to the United States when her status was adjusted to that of "an alien lawfully admitted for permanent residence" pursuant to section 245A(b) of the Act. Although this change in status does not meet the definition of an "admission" in section 101(a)(13)(A), because entry occurred prior to the determination of admissibility, that definition does not set forth the sole and exclusive means by which admission to the United States may occur under the Act. Admissions also occur after entry through the process of adjustment of status under sections 245 and 245A. Such admissions are explicitly recognized in the language of section 101(a)(20).

We note that adopting the narrow reading of "admission" urged by this respondent would preclude permanent residents who entered without inspection and then adjusted their status from eligibility for those forms of relief restricted to aliens who have been "admitted" to the United States. *See, e.g.,* sections 212(c) (alien lawfully admitted for permanent residence with 7 years' residence), 240A(a) of the Act (7 years' residence in the United States after "admission in any status"). Under the respondent's reading, an alien who entered without inspection and resided in this country for many years as a permanent resident after adjustment of status under section 245A would be ineligible for relief under sections 212(c) or 240A(a) because he or she would not be considered to have been "admitted" for permanent residence. Thus, the holding in this case will work to the advantage of some aliens who have adjusted to lawful permanent resident status and who later wish to seek relief from deportation or removal.

## IV. CONCLUSION

We find that, when considered in light of the overall statutory scheme, the reference in section 237(a)(2)(A)(iii) of the Act to "after admission" includes both those aliens who are "admitted" at the time of entry pursuant to section 101(a)(13)(A) as well as those who are "lawfully admitted for permanent residence," as defined in section 101(a)(20). We therefore find that the respondent's adjustment of status in 1989 under section 245A(b) constituted an "admission" to the United States as that term is used in section 237(a)(2)(A)(iii).[5] This reading of the statutory language gives practical meaning to section 101(a)(20) and is in harmony with the use of the terms "admitted" and "admission" in the provisions of the Act discussed above.

---

[5]We do not here attempt to resolve the meaning of "admission" in other contexts or under other provisions for adjustment of status.

During the course of the proceedings below, the Immigration Judge made explicit findings as to all the aspects of the respondent's deportability except for the question whether her conviction for the aggravated felony occurred after an "admission" to the United States. On this record, we find that the Service has demonstrated that the respondent was convicted of an aggravated felony after admission to the United States and that she is therefore removable as charged under section 237(a)(2)(A)(iii) of the Act. As the respondent has not shown eligibility for any relief from removal, we will order her removed from the United States to Mexico.[6]

**ORDER:** The appeal of the Immigration and Naturalization Service is sustained, the removal proceedings are reinstated, and the respondent is ordered removed from the United States to Mexico.

Board Member Anthony C. Moscato did not participate in the decision in this case.

*CONCURRING AND DISSENTING OPINION:* Lory Diana Rosenberg, Board Member

I respectfully concur in part and dissent in part.

Congress' substitution of the term, "after admission" for "after entry" in section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii) (Supp. II 1996), and in various other subsections of the Act, has created semantic ambiguities that impair a rational interpretation of the statute and have forced the Board to inappropriately guess at Congress' intent. Although I ultimately concur that the respondent is removable under the ground of deportability charged, I do so for reasons different from those set forth in the majority opinion.

I take issue with the reasoning of the majority concerning the meaning of sections 101(a)(13)(C) and (20) of the Act, 8 U.S.C. §§ 1101(a)(13)(C) and (20) (1994 & Supp. II 1996), in relation to section 237(a)(2)(A)(iii). Specifically, I disagree with their construction of the term "admission," a definitional term introduced by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546 ("IIRIRA"), in relation to a respondent who initially

---

[6]At the hearing, the Service amended the charging document to allege that the respondent had entered the United States from Mexico in October 1996, at which time she was lawfully inspected and admitted by an immigration officer at the Otay Mesa port of entry as a returning lawful permanent resident. The Service argued that this "admission" should be considered in determining whether the respondent was convicted of an aggravated felony after admission. Having found that the respondent's adjustment of status in 1989 was an "admission" within the meaning of section 237(a)(2)(C)(iii), we find it unnecessary to address this issue.

entered the United States without inspection, but later adjusted her status to lawful permanent resident. *See* section 101(a)(13) of the Act.

The problem with which we are faced is that Congress' substitution of the term "admission," as meaning a "lawful entry," for the previous definition of "entry" as any unrestrained crossing of the United States border, was not carefully or thoughtfully accomplished. Although it is possible that Congress may have intended the ground of deportability codified as section 237(a)(2)(A)(iii) of the Act to apply to an individual who adjusted her status, such as the respondent, there is nothing in the statute that so states. That section of the statute refers to convictions occurring "after admission," and the process known as adjustment of status does not involve or constitute an "admission" as defined in the statute. I cannot agree that any portion of the statutory language relied upon by the majority necessarily warrants this conclusion, or even that such a conclusion is compelled by the statutory language in pertinent part or considered as a whole.

In addition, in light of the majority's acknowledgment that "this case presents a question of statutory construction that is of first impression," I also am troubled by the fact that the respondent is unrepresented in this appeal before us, and that she was unrepresented below. Although the Board has had the benefit of both trial and an appellate briefs submitted by the Immigration and Naturalization Service, the position taken by the Immigration Judge in favor of the respondent has not been briefed, either by an attorney or representative appearing on behalf of the respondent, or by any organization having an interest and expertise in the question, amicus curiae.


## I. RESTATEMENT OF THE ISSUE AND THE CONCLUSION

The question is not whether a lawful permanent resident has been accorded the status of an individual "admitted for lawful permanent residence," but whether the person was convicted of a crime classified as an aggravated felony *after admission* to the United States. The point is not that being lawfully admitted for permanent residence means that the respondent has effected an "admission" or been "admitted," but that having adjusted her status, the respondent was assimilated to the position of an alien who made an entry, or, according to today's terminology, an alien who has been admitted to the United States. *Cf.* section 101(a)(20) of the Act.


## II. ANALYSIS OF THE TERMINOLOGY AND AUTHORITIES

The phrase "after admission," as used in section 237(a)(2)(A)(iii) of the Act, is used in place of "after entry" in the former statute. *See* former sec-

tion 241(a)(2)(A)(iii) of the Act, 8 U.S.C. § 241(a)(2)(A)(iii) (1994). As the statute makes clear, "admission" as used in this context continues to mean coming to the United States and crossing over the border. The only significant change is that the new terms "admission" and "admitted" require that the entry must be lawful. That is, the individual must be inspected by an immigration official at a port of entry and authorized to enter the country. *See* section 101(a)(13)(A) of the Act (stating that "[t]he terms 'admission' and admitted' mean . . . the *lawful entry* of the alien into the United States").

## A. Plain Meaning of the Language Used

It is true that an individual who has been "lawfully admitted for permanent residence" based on an application for adjustment of status has established that she is not inadmissible, i.e., that she does not fall under any of the grounds of inadmissibility found in section 212 of the Act, 8 U.S.C. § 1182 (1994 & Supp. II 1996). Nevertheless, as the majority agrees, she has not been inspected and authorized to enter lawfully as contemplated in section 101(a)(13)(A) of the Act. Thus, she has not been "admitted," as defined. I do not view the phrase "lawfully accorded the privilege of residing permanently in the United States as an immigrant," used in section 101(a)(20) of the Act, as constituting an "admission" following inspection and authorization to enter the territory of the United States at the border or a port of entry.

The word "admitted," as used in the phrase "lawfully admitted for permanent residence" found in section 101(a)(20) of the Act, is a term of art that by its plain language reflects a "*status*." The statute states with particularity that the status is meant to refer to an individual "having been lawfully *accorded* the privilege of residing permanently." *Id.* (emphasis added). The word "admitted" in this phrase does not act as a verb, as the majority suggests, referring to an admission at the border as well as an admission in the course of the adjustment process. On the contrary, the word "admitted" is not separable from the remainder of the phrase. Rather, the phrase "lawfully admitted for permanent residence" functions as an adjective and must be understood as an intact description that refers to aliens who have been "accorded" the privilege of residing permanently.

The term "having been accorded" in the phrase "having been accorded the privilege of residing permanently" refers to a past occurrence that continues to exist, or is ongoing, in the present. The word "accord," when used as a verb, means "[t]o grant," *Webster's II New Riverside University Dictionary* 71 (1994), as well as, "[i]n practice, to agree or concur, as one judge with another," or to be "[i]n agreement with." *Black's Law Dictionary* 17 (6th ed. 1990). Thus, an individual who has been "lawfully admitted for permanent residence" has been *granted* a status in the past that continues into the future. The status is one in which an alien may reside

permanently in the United States:  lawful permanent resident status.

Moreover, the statutory provisions that instruct the Attorney General to record the acquisition of "admission for permanent residence," as that phrase is used in sections 240A(b)(3) and 245 of the Act, 8 U.S.C. § 1229b(b)(3), 1255 (1994 & Supp. II 1996), instruct the Attorney General to record the fact of the acquisition of *the status*, not the admission of the alien. Notably, in section 240A(b)(3), the active verb is "adjust," as in, "[T]he Attorney General *[may adjust]* . . . the status of an alien lawfully admitted for permanent residence," not "admission" or "admitted."

The distinction between having been lawfully accorded a status that allows the holder to reside permanently in the United States and having made a "lawful entry," as the terms "admission" and "admitted" presently are defined, should be obvious. Although an "admission" requires a lawful entry, it is not dependent on whether the holder was "lawfully admitted for permanent residence."  Similarly, although the status of being lawfully admitted for permanent residence suggests lawful presence in the United States, it is not dependent on the holder having made a lawful entry.

This distinction was recently brought out in *Matter of Ayala*, 22 I&N Dec. (BIA 1998), in which the majority emphasized specifically that section 212(h) of the Act did not "distinguish between those whose admission was lawful and those who were previously admitted for lawful permanent residence but are subsequently determined to have been admitted in violation of the law."  *Id.* at 4. The majority opinion went into some detail differentiating the status of having been lawfully admitted for permanent residence and "the main issue in this case, which is whether the respondent 'has previously been *admitted*.'"  *Id.* at 5. In other words, that an individual has been "accorded" lawful permanent resident status is not determinative of whether he has been previously been admitted or made a lawful entry, as now defined in the statute.

## B. Prior Interpretations of "Entry" and "Admission"

In *Sale v. Haitian Centers Council, Inc.*, 509 U.S. 155, 175 (1993), the Supreme Court recognized that, "[u]nder the INA, both then and now, those seeking 'admission' and trying to avoid 'exclusion' were already within our territory (or at its border), but the law treated them as though they had never entered the United States at all . . . . Those who had been admitted (or found their way in) but sought to avoid 'expulsion' had the added benefit of 'deportation proceedings'; they were both within United States territory and 'within the United States.'"  Notably, the Supreme Court recognized that "[a]lthough the phrase 'within the United States' presumed the alien's actual presence in the United States, it had more to do with an alien's legal status than with his location." *Id.*

Section 101(a)(13)(A) limits the scope of the definition of the terms

"admission" and "admitted" to what occurs after "inspection and authorization by an immigration officer." The language of the statute specifically equates "admission" and being "admitted" with an "entry," stating that "[t]he terms . . . mean . . . *the lawful entry* of the alien *into* the United States." *Id.* (emphasis added). Thus, this "inspection and authorization" presumably occurs at a port of entry before an alien enters the United States, and presumably follows examination of documents and an eligibility determination that the applicant for admission is not inadmissible.

As the majority opinion indicates, the IIRIRA sought to eliminate the status acquired by an alien who had "entered" the United States, when such entry was surreptitious. Nevertheless, the terms "entry" and "entered" have a longstanding and well-defined meaning within the Act. The term "entry" is a word of art that cannot be interpreted loosely. *See generally Matter of Lin*, 18 I&N Dec. 219 (BIA 1982); *Matter of Lewiston-Queenston Bridge*, 17 I&N Dec. 410 (BIA 1980); *Matter of Pierre*, 14 I&N Dec. 467 (BIA 1973). As used previously in the Immigration and Nationality Act, it means "any coming of an alien into the United States, from a foreign port or place or from an outlying possession." Section 101(a)(13) of the Act, 8 U.S.C. § 1101(a)(13) (1994); *Matter of Connelly*, 19 I&N Dec. 156, 159 (BIA 1984); *see also Matter of Patel*, 20 I&N Dec. 368, 370 (BIA 1991).

Although the amendment to section 101(a)(13) by the IIRIRA purported to substitute the term "admission" for the prior term "entry," the statute continues to define an admission by reference to an "entry," albeit a lawful entry. *See Lorillard v. Pons*, 434 U.S. 575, 581 (1978) (stating that "*where, as here, Congress adopts a new law incorporating sections of a prior law,* Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute" (emphasis added)). "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change . . . ." *Id.* (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 414 n.8 (1975); *NLRB v. Gullett Gin Co.*, 340 U.S. 361, 366 (1951); *National Lead Co. v. United States*, 252 U.S. 140, 147 (1920); 2A C. Sands, *Sutherland on Statutory Construction* § 49.09 (4th ed. 1973), and cases cited therein).

Here, Congress adopted and continued to use the term "entry," and only modified with it the word "lawful," so that for purposes of an "admission," the entry had to follow inspection and authorization. Thus, "Congress exhibited *both a detailed knowledge of the . . . provisions and their judicial interpretation and a willingness to depart from those provisions regarded as undesirable or inappropriate for incorporation. . . . This selectivity . . . strongly suggests that but for those changes Congress expressly made, it intended to incorporate fully the [prior interpretation of the provisions]." Lorillard v. Pons, supra,* at 582 (emphasis added).

## C. Adjustment of Status

Neither "entry" nor "lawful entry" means "adjustment of status" to that of a lawful permanent resident, nor is an "admission" and "lawful entry," as used in section 101(a)(13) of the Act, the equivalent of adjustment of status to lawful permanent resident. *Matter of Rainford* 20 I&N Dec. 598, 601 (BIA 1992) (reiterating that "[a]n *adjustment of status . . . does not constitute an entry*. As we have repeatedly held, an *adjustment of status is merely a procedural mechanism . . . .*" (emphasis added)). Rather, "an alien applying for adjustment of status under section 245 *is assimilated* to the position of an alien who is making an entry. *The only purpose of that 'assimilation' is to decide whether the alien meets the requirement of section 245(a) that he be 'admissible to the United States for permanent residence.'"* *Matter of Connelly, supra,* at 159 (emphasis added); *see also Matter of Rainford, supra*, at 601. That such an assimilation is but a legal fiction in relation to an actual "entry" or "admission" is emphasized by the fact that some adjustments are back-dated to the date of the alien's actual "entry" or "admission" into the United States. *See, e.g., Matter of Diaz-Chambrot*, 19 I&N Dec. 674 (BIA 1988).

Thus, an alien who has acquired the status of one "lawfully admitted for permanent residence" through the process of adjustment of status has not been "admitted" as defined in section 101(a)(13) of the Act. With regard to the treatment of lawful permanent residents returning from a trip abroad, many of whom are exempt from having to establish admissibility, I believe the statute and case law support the interpretation that it is the lawful permanent resident status held by these individuals—and not a previous admission—that exempts them from having to go through the entire affirmative exercise of demonstrating that they are not inadmissible. *See* section 101(a)(13)(C) of the Act.

It is argued that subparagraph (C) provides a basis for concluding that someone who adjusted (even after having entered without inspection) has been "admitted" as defined in 101(a)(13) of the Act because subparagraph (C) contemplates not reexamining that individual for admission. However, subparagraph (C) does not actually state that the individual already has been "admitted" within the meaning of subparagraph (A) of section 101(a)(13) of the Act. Subparagraph (C) merely states that having been accorded a certain status, the individual will not be considered an "applicant for admission," unless the individual falls within a number of specific classifications that reflect certain grounds of inadmissibility.

The clauses that fall under section 101(a)(13)(C) of the Act seem to support an argument that subparagraph (C) neither explicitly nor implicitly warrants the conclusion that adjustment of status to lawful permanent resident is an "admission," because those clauses undeniably entail an examination of returning lawful permanent residents who may be inadmissible on

certain grounds. These comprehensive grounds cover the most significant grounds of inadmissibility and involve those under which the individual's status as a lawful permanent resident is likely to be in question. They include the situation of an alien who is believed to have actually abandoned or relinquished her status, or an alien who indulged in a lengthy stay outside the United States of over 6 months that may raise the issue of abandonment of lawful permanent resident status; as well as that of an alien who engaged in illegal activity after departing the United States or departing while under legal process; that of an alien believed to be inadmissible on any one of several grounds related to criminal conduct or criminal convictions; and that of an alien who attempts to enter the United States at an undesignated time or place, or who has not been admitted to the United States after inspection and admission. *See* sections 101(a)(13)(C)(i) - (vi). Therefore, subparagraph (C) appears to be no more than an exemption for a very few lawful permanent residents who already have been accorded a permanent status, based on a prior determination of their substantive admissibility, with some very significant exceptions. *See, e.g., Matter of Collado,* 21 I&N Dec. 1061 (BIA 1997).

Furthermore, any argument that an alien who adjusted to the status of a lawful permanent resident is somehow advantaged by being considered to have been "admitted" within the meaning of section 101(a)(13) of the Act simply is unavailing. The burden of proof in the case of an alien who has been lawfully admitted for permanent residence historically has fallen on the Service even when the proceedings were conducted in the exclusion context, in which the alien ordinarily bore the burden of proof. *See Matter of Huang*, 19 I&N Dec. 749 ( BIA 1988); *Matter of Kane,* 15 I&N Dec. 258 (BIA 1975); *see also Landon v. Plascencia*, 459 U.S. 21 (1982). I dare say that there is ample authority to invoke those principles to maintain the rule that a lawful permanent resident of the United States charged with being removable must be shown to be removable as charged even if the charge is based on a ground of inadmissibility.

Nevertheless, although the communication that an alien is not inadmissible "normally takes place when the inspector allows the alien to pass through the port of entry. This is not, however, the only instance in which an alien's admissibility is determined and that determination communicated to the alien." *Matter of Jimenez-Lopez*, 20 I&N Dec. 738, 741 (BIA 1993) (citations omitted). According to the Board's decision in *Matter of Jimenez-Lopez, supra*, decided under the prior version of the statute, "adjustment of status under section 245 would logically provide the final element of 'admission' and would thereby create an entry, effective as of the date of adjustment." *Id.* at 741-42.

In the end, rather than adopting what I find to be an extremely constricted and strained interpretation of the statute, I am persuaded by our historical approach in dealing with adjustment of status, as well as with two

Supreme Court decisions that addressed a change, both in terminology and status, that affected certain aliens. In *Rabang v. Boyd*, 353 U.S. 427 (1957), the Supreme Court emphasized that a congressional enactment that did not require entry from a foreign country was not a condition that had to be proven to establish deportability, even though the prior statute that was in existence at the time of the alien's arrival in the United States did so require. Mr. Justice Brennan, writing for the Court, explained,

> He relies on *Barber v. Gonzales*, 347 U.S. 637, 74 S. Ct. 822, 824, 98 L. Ed. 1009, where this Court held that a Filipino admitted for permanent residence in 1930 was not deportable under § 19(a) of the Immigration Act of 1917 as an alien sentenced for certain crimes "committed . . . *after entry*." (Emphasis added.) The word "entry" was held to be significant of a congressional purpose to limit deportation under § 19(a) to aliens arriving "from some foreign port or place," a description which did not fit a territory belonging to the United States. But the 1931 Act differs from the 1917 Act because it is silent as to whether "entry" from a foreign country is a condition of deportability. By its terms, the 1931 Act applies to ". . . any alien . . . who, after . . . [February 18, 1931], shall be convicted . . ." of a federal narcotics offense. It follows that the holding in Gonzales is not applicable.

*Rabang v. Boyd, supra,* at 431.

By analogy, I conclude that while the word "entry" previously was invoked to mean the literal crossing of a border and the unrestrained entry of an alien into the United States, it no longer is used in that sense. Rather, the term "entry," to the extent that it is invoked in the statute, now is modified by the word "lawful" to refer to a status in the United States that is conferred after an official inspection and authorization. *See* section 101(a)(13)(A) of the Act. Thus, the current substitution of the term "admission" for "entry" in section 237(a)(2)(A)(iii) is reasonably interpreted as including convictions occurring after the adjustment of status procedure by which certain aliens are examined, found not to be inadmissible, and acquire lawful permanent resident status. The term "admission," in "after admission," may be reasonably interpreted as referring to the situation in which one who adjusted her status was assimilated to the position of an individual being "admitted" to the United States, without the need to demonstrate an actual "lawful entry" in the sense of an authorized arrival from a foreign land. *Cf. Barber v. Gonzales*, 347 U.S. 637, 642 (1954).

Accordingly, although I dissent from the reasoning adopted by the majority, I concur in the result reached.