# Matter of Bouchra AGOUR, Respondent

*Decided May 18, 2015*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

Adjustment of status constitutes an "admission" for purposes of determining an alien's eligibility to apply for a waiver under section 237(a)(1)(H) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(1)(H) (2012). *Matter of Connelly*, 19 I&N Dec. 156 (BIA 1984), distinguished.

FOR RESPONDENT: Henry Cruz, Esquire, Seattle, Washington

FOR THE DEPARTMENT OF HOMELAND SECURITY: Eric Bakken, Senior Attorney

BEFORE: Board Panel: COLE and GREER, Board Members. Dissenting Opinion: PAULEY, Board Member.

COLE, Board Member:

In a decision dated June 15, 2010, an Immigration Judge found the respondent removable on her own admissions and ineligible to apply for a waiver under section 237(a)(1)(H) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(1)(H) (2006).[1] The respondent has appealed from that decision. The appeal will be sustained and the record will be remanded to the Immigration Judge for further proceedings.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Morocco who was admitted to the United States on a nonimmigrant visitor visa in 1999. In July 2001, she married a United States citizen who then filed a visa petition on her behalf.

---

[1] On August 14, 2014, the respondent filed a motion to remand proceedings based on a purported change in the position taken by the Department of Homeland Security ("DHS"). Although the DHS has withdrawn its opposition to the respondent's statutory eligibility for relief, it does so without explanation. Given briefed arguments to the contrary and the need for uniformity, we continue to address and resolve the issue whether an adjustment of status constitutes an admission for purposes of section 237(a)(1)(H) of the Act.

In 2002, the respondent was granted conditional permanent resident status pursuant to section 216(a) of the Act, 8 U.S.C. § 1186a(a) (2000).[2] The conditional basis of respondent's permanent residence was removed in 2005 by the approval of a jointly filed Form I-751 (Petition to Remove Conditions on Residence).

The Department of Homeland Security ("DHS") filed a notice to appear with the Immigration Court on September 5, 2008, charging the respondent with being removable under section 237(a)(1)(A) of the Act,[3] as an alien who is inadmissible based on fraud or misrepresentation under section 212(a)(6)(C)(i) of the Act, 8 U.S.C. § 1182(a)(6)(C)(i) (2006).[4] This charge was based on allegations that the respondent procured her adjustment of status by fraud or by willfully misrepresenting a material fact when she married for the sole purpose of obtaining permanent residence in the United States. The respondent was also charged under sections 237(a)(1)(A) and 212(a)(7)(A)(i)(I) of the Act for lacking a valid visa.[5]

On June 18, 2009, the DHS filed a Form I-261 (Additional Charges of Inadmissibility/Deportability), withdrawing the section 212(a)(7)(A)(i)(I) charge, withdrawing the general allegations related to marriage fraud, and adding a new allegation that the respondent submitted a fraudulent lease agreement in support of her Form I-751 petition in order to establish the bona fides of her marriage. The respondent admitted this allegation, conceded removability, and as relief from removal, sought a discretionary waiver for fraud pursuant to section 237(a)(1)(H) of the Act.[6] The

---

[2] The respondent's adjustment to the status of a lawful permanent resident on a conditional basis was obtained through her marriage to a United States citizen. Consequently, she became an alien "lawfully admitted for permanent residence," notwithstanding the conditions that remained. *See Matter of Paek*, 26 I&N Dec. 403 (BIA 2014).

[3] Section 237(a)(1)(A) provides that "[a]ny alien who at the time of entry or adjustment of status was within one or more classes of aliens inadmissible by the law existing at such time is deportable."

[4] Section 212(a)(6)(C)(i) provides that "[a]ny alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this Act is inadmissible."

[5] Section 212(a)(7)(A)(i)(I) provides, in pertinent part, that "any immigrant at the time of application for admission . . . who is not in possession of a valid unexpired immigrant visa . . . is inadmissible."

[6] Section 237(a)(1)(H) of the Act provides, in pertinent part, as follows:

> The provisions of this paragraph relating to the removal of aliens within the United States on the ground that they were inadmissible at the time of admission as aliens described in section 212(a)(6)(C)(i), whether willful or innocent, may, in the discretion of the Attorney General, be waived for any alien . . . who—

(continued . . .)

respondent argued that she was eligible for the waiver because any fraud committed at the time of her adjustment of status was at the time of her admission for permanent residence, she was otherwise admissible, and denial of the waiver would result in hardship to her United States citizen son.

The Immigration Judge did not consider the nature of the respondent's fraud associated with the submission of a fraudulent lease as it relates to her adjustment to lawful permanent resident status because he concluded that she was not statutorily eligible for the section 237(a)(1)(H) waiver.[7] He found that the statute's plain language regarding the "time of admission" refers to the respondent's initial entry into the United States as a nonimmigrant in 1999. He relied on decisions issued by the Board in *Matter of Connelly*, 19 I&N Dec. 156 (BIA 1984), and the United States Court of Appeals for the Ninth Circuit in *Khadjenouri v. INS*, 460 F.2d 461 (9th Cir. 1972), interpreting the predecessor waiver to section 237(a)(1)(H) and finding that it was limited to waiving fraud and misrepresentation committed in connection with an alien's entry into the United States, not fraud in connection to the alien's adjustment of status. The Immigration Judge also relied on the Ninth Circuit's decision in *Shivaraman v. Ashcroft*, 360 F.3d 1142 (9th Cir. 2004), which held that for purposes of removability under section 237(a)(2)(A)(i)(I) of the Act,[8] there can be only one "date of admission," which is the time of the alien's original lawful entry.

The Immigration Judge examined the statutory language and other court and Board cases finding that an adjustment of status constitutes an admission. However, the Immigration Judge found that adjustment of status is deemed an admission only to avoid "absurd results."

_____

(i)(I) is the spouse, parent, son, or daughter of a citizen of the United States or of an alien lawfully admitted to the United States for permanent residence; and

(II) was in possession of an immigrant visa or equivalent document and was otherwise admissible to the United States at the time of such admission except for those grounds of inadmissibility specified under paragraphs (5)(A) and (7)(A) of section 212(a) which were a direct result of that fraud or misrepresentation.

[7] Because the respondent conceded the charge of removability and applied for the waiver under section 237(a)(1)(H) of the Act, there is an issue whether her admission to the factual allegation that she submitted a fraudulent lease with her Form I-751 adequately reflects that she committed fraud at the time of her adjustment of status. Although we resolve the legal question of eligibility for the waiver, we leave it to the Immigration Judge on remand to determine whether the respondent is statutorily eligible for the waiver.

[8] Section 237(a)(2)(A)(i)(I) of the Act provides for the removal of aliens convicted of a crime involving moral turpitude "within five years . . . after the date of admission."

*See Ocampo-Duran v. Ashcroft*, 254 F.3d 1133, 1134−35 (9th Cir. 2001) (expressing disbelief that Congress "would create a loophole in the removal laws" to benefit unlawful entrants who committed aggravated felonies); *Matter of Rodarte*, 23 I&N Dec. 905, 908 (BIA 2006) (finding that the term "seeks admission" in the recidivist ground of removal under section 212(a)(9)(B)(i)(II) includes adjustment of status because the Board did "not believe that Congress intends the Immigration and Nationality Act to be interpreted in a manner that would give aliens an incentive to enter the United States illegally"); *Matter of Rosas*, 22 I&N Dec. 616 (BIA 1999) (holding that adjustment of status was an "admission" for purposes of the aggravated felony removal ground where the respondent had entered unlawfully, because to interpret otherwise would render lawful entrants removable and unlawful entrants not removable). The Immigration Judge therefore concluded that the respondent was ineligible for a waiver under section 237(a)(1)(H) of the Act because the fraud in question had no connection to her 1999 entry with a visitor visa.

On appeal, the respondent does not contest her removability but contends that the section 237(a)(1)(H) waiver applies to any fraud she committed in the process of procuring lawful permanent resident status. She argues that the definition of the term "admission" in section 101(a)(13)(A) of the Act, 8 U.S.C. § 1101(a)(13)(A) (2012), does not address the scope of the term within the Act. The respondent cites to our decisions holding that admission to the United States also includes the process of adjustment of status. Specifically, she argues that the term "admitted," as defined in section 101(a)(13)(A), does not adequately cover an alien who is lawfully admitted for permanent residence by adjustment of status in the United States. She points to our description of "adjustment of status" as a "procedural mechanism by which an alien is assimilated to the position of one seeking to enter the United States." *Matter of Rainford*, 20 I&N Dec. 598, 601 (BIA 1992).

Additionally, the respondent argues that section 101(a)(20) of the Act, which defines the phrase "lawfully admitted for permanent residence," includes both an entry into the United States with an immigrant visa and an adjustment of status in the United States. She finds further statutory support in sections 245(a) and (b) of the Act, 8 U.S.C. §§ 1255(a) and (b) (2012), which describe adjustment of status as an "admission" for permanent residence and for allocation of an immigrant visa. Since the 237(a)(1)(H) waiver requires the alien to be in possession of an immigrant visa or equivalent document at the time of admission, the respondent asserts that her adjustment is equivalent to having an immigrant visa. She therefore concludes that because adjustment of status has been recognized as serving the same procedural function as an "admission" under the Act, a

waiver under section 237(a)(1)(H) should be available whenever an alien commits fraud in the adjustment of status process.

## II.  ISSUE

At issue in this case is whether a section 237(a)(1)(H) waiver for certain fraud or misrepresentation at the time of admission is available to aliens who commit fraud in the process of adjusting their status within the United States.  The respondent seeks to waive fraud that occurred after her initial entry into the United States as a nonimmigrant.  Therefore, the question is whether an adjustment of status can be an admission for purposes of the section 237(a)(1)(H) waiver.

We have not previously published a decision regarding whether a section 237(a)(1)(H) waiver is available to aliens who adjust their status within the United States.  To our knowledge, nor has any other Federal court of appeals, including the Ninth Circuit, in whose jurisdiction this case arises.[9]  Our prior decisions discussing the section 237(a)(1)(H) waiver involved aliens admitted to the United States with immigrant visas who were then charged with being removable for fraud or misrepresentation in that initial entry.  *See, e.g.*, *Matter of Federiso*, 24 I&N Dec. 661 (BIA 2008), *overruled on other grounds*, *Federiso v. Holder*, 605 F.3d 695 (9th Cir. 2010); *Matter of Fu*, 23 I&N Dec. 985 (BIA 2006).

We conclude that an alien's adjustment of status within the United States constitutes an admission for purposes of the waiver at section 237(a)(1)(H) of the Act.  The waiver is not limited only to those aliens who engage in fraud or misrepresentation at the time of entry into the United States with an immigrant visa.  Therefore, an alien who commits fraud in the course of adjusting status in the United States may waive removal under section 237(a)(1)(A) of the Act as an alien who was inadmissible at the time of adjustment of status based on fraud or misrepresentation.

## III.  ANALYSIS

With questions of statutory interpretation, we look first to the plain and sensible meaning of the statute and give effect to that meaning when possible.  *See, e.g.*, *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340−41

---

[9]  The Ninth Circuit has acknowledged other cases in which it found adjustment of status to be an admission. *See Negrete-Ramirez v. Holder*, 741 F.3d 1047, 1052 (9th Cir. 2014) (citing *Ocampo-Duran v. Ashcroft*, 254 F.3d at 1134−35 (holding that adjustment of status may serve as an admission for purposes of removability under section 237(a)(2)(A)(iii) of the Act)).

(1997); *Alvarado v. U.S. Att'y Gen.*, 610 F.3d 1311, 1315−16 (11th Cir. 2010); *Matter of A-M-*, 25 I&N Dec. 66, 74−75 (BIA 2009); *see also Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 986 (2005) (stating that in interpreting a statute, the first step is to determine whether its plain terms address the question at issue); *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842−43 (1984). In ascertaining the plain meaning of a statute, we consider the particular statutory language at issue, the provision in the context of the whole statute and relevant case law, and its legislative purpose and intent.

### A.  Statutory Framework

#### 1.  Section 101(a) of the Act

Because we do not derive statutory meaning in a vacuum, we find that the language of section 101(a)(13)(A) of the Act alone controls in ascertaining the meaning of the phrase "at the time of admission" as it is used in section 237(a)(1)(H). The terms "admitted" and "admission" appear in different contexts in the Act, including within section 101(a)(13) itself.

Prior to 1996, section 101(a)(13) defined the term "entry" as the "coming of an alien into the United States, from a foreign port or place or from an outlying possession." In 1996, that term was eliminated, and the terms "admission" and "admitted" were first defined by section 301 of the Illegal Immigration Reform and Immigrant Responsibility Act, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-575 ("IIRIRA"), which was entitled "Treating persons present in the United States without authorization as not admitted." *See* IIRIRA § 301(a), 110 Stat. at 3009-575. Aliens who have adjusted status in the United States are not "persons present in the United States without authorization," suggesting that Congress did not intend for section 101(a)(13)(A) of the Act to preclude a finding that aliens who adjust their status have been admitted. The new terms were codified with three provisions in a new section 101(a)(13).[10] The conference report for the IIRIRA states that in creating

---

[10]  Section 101(a)(13) of the Act now provides as follows:

> (A) The terms "admission" and "admitted" mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer.
>
> (B) An alien who is paroled under section 212(d)(5) or permitted to land temporarily as an alien crewman shall not be considered to have been admitted.

(continued . . .)

section 101(a)(13)(A) of the Act, Congress was "replacing the definition of 'entry' with a definition for 'admission' and 'admitted,'" rather than providing the exclusive definition for those terms. H.R. Rep. No. 104-828, at 207 (1996) (Conf. Rep.), 1996 WL 563320.[11]

Moreover, under section 101(a)(13)(B) of the Act, Congress specified certain alien parolees and crewmen who may not be considered to have been "admitted." Because Congress did not include aliens who adjusted their status while in the United States in section 101(a)(13)(B), this provision does not preclude them from being deemed "admitted."

Finally, section 101(a)(13)(C) of the Act states that an alien "lawfully admitted for permanent residence" (as defined in section 101(a)(20) of the Act) shall not be regarded as seeking an admission to the United States unless certain criteria are met. This language also supports a finding that an adjustment of status is a lawful admission.

Section 101(a)(20) of the Act defines the term "lawfully admitted for permanent residence" as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." By definition, this section would include both aliens who entered with immigrant visas and those who adjusted subsequent to entry. Read together with sections 101(a)(13)(B) and (C) of the Act, section 101(a)(20)

---

(C) An alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws unless the alien—

(i) has abandoned or relinquished that status,

(ii) has been absent from the United States for a continuous period in excess of 180 days,

(iii) has engaged in illegal activity after having departed the United States,

(iv) has departed from the United States while under legal process seeking removal of the alien from the United States, including removal proceedings under this Act and extradition proceedings,

(v) has committed an offense identified in section 212(a)(2), unless since such offense the alien has been granted relief under section 212(h) or 240A(a), or

(vi) is attempting to enter at a time or place other than as designated by immigration officers or has not been admitted to the United States after inspection and authorization by an immigration officer.

[11] The term "admitted" was not defined under the former statutory scheme, but it did appear in various sections of the Act. *See, e.g.*, former sections 101(a)(20) (defining the term "lawfully admitted for permanent residence"); 212(a) (describing classes of aliens to being excluded from "admission"); 214(a)(1) (providing for the "admission" of nonimmigrants); 245(a) (permitting adjustment of status to that of a person "admitted" for lawful permanent residence) of the Act, 8 U.S.C. §§ 1101(a)(20); 1182(a); 1184(a)(1); 1255(a) (1994).

necessarily provides that aliens who adjusted their status from within the United States are not seeking "admission" but, rather, have already been admitted.

Section 101(a)(16) of the Act defines the term "immigrant visa" as an "immigrant visa required by this Act and properly issued by a consular officer at his office outside of the United States to an eligible immigrant." An alien who adjusts status in the United States is not issued an immigrant visa even though he or she must be eligible to receive one and have it immediately available at the time the application for adjustment of status is filed. *See* 8 C.F.R. § 1245.1(a) (2014). Additionally, the section 237(a)(1)(H) waiver is only available to lawful permanent residents who possessed an "immigrant visa or equivalent document" at the time of the fraud. Section 237(a)(1)(H)(i)(II) of the Act. We note that although an immigrant visa is defined in the Act, the term "equivalent document" is not.

## 2. Section 245 of the Act

Section 245(a) of the Act gives the Attorney General discretion to adjust the status of certain aliens to that of an alien admitted for lawful permanent residence, provided that the alien is eligible for a visa and that one is available. Section 245(b) provides that upon the approval of an application for adjustment, the Attorney General shall record the alien's lawful admission for permanent residence as of the date that the application for adjustment of status is approved. It further requires the Secretary of State to reduce the number of available preference visas to correspond to the number of adjustment of status applications granted by the Attorney General under section 245(a) of the Act.

We agree with the respondent that section 245(b) treats adjustment of status as substantially equivalent to an admission pursuant to an immigrant visa, or a "lawful admission for permanent residence." *See* section 245(b) of the Act; *Matter of Alyazji*, 25 I&N Dec. 397, 399 (BIA 2011); 8 C.F.R. § 1.2 (2014) (defining "lawfully admitted for permanent residence"); *Matter of Rosas*, 22 I&N Dec. at 619 (recognizing that other provisions of the Act governing, for example, adjustment of status for refugees and special agricultural workers confer the status of an alien "lawfully admitted for permanent residence").

## 3. Sections 237(a)(1)(A) and (H) of the Act

Section 237(a)(1) of the Act applies to an alien who is "[i]nadmissible *at time of entry or of adjustment of status* or violates status." (Emphasis added.) Section 237(a)(1)(H) provides for a waiver of "[t]he provisions of this paragraph relating to the removal of aliens within the United States on

the ground that they were inadmissible *at the time of admission*," which includes the ground of deportability at section 237(a)(1)(A) of the Act. (Emphasis added.)  Clearly, the language of these two statutes is different, in part because the waiver provision has changed substantially as a result of various amendments to the Act.[12]

## B.  Legislative History of Section 237(a)(1) of the Act

### 1.  Precursor Statutes to the Fraud Deportation Ground and Waiver

Former section 241(a)(1) of the Act, 8 U.S.C. § 1251(a)(1) (1952), was parallel to the current section 237(a)(1)(A), in that it referred to classes of aliens excludable by law *at the time of entry*, as provided in former section 212(a) of the Act, 8 U.S.C. § 1182(a) (1952).  *See* Immigration and Nationality Act, Pub. L. No. 82-414, § 241(a)(1), 66 Stat. 163, 204 (1952).[13]  In turn, section 212(a) generally referenced "classes of aliens ineligible to receive visas and excluded from *admission*."  *See* 66 Stat. at 182 (emphasis added).  Although the term "admission" was used in section 212(a) and other parts of the 1952 Act, the term was not then defined in the statute.

In 1957, Congress created an exception from deportation under section 241(a)(1) for aliens who were "excludable at the time of entry" on account of fraud or misrepresentation, as described in former section 212(a)(19) of the Act.[14]  Act of Sept. 11, 1957, Pub. L. No. 85-316, § 7, 71 Stat. 639,

---

[12]  In comparing these sections, we do not suggest that section 237(a)(1)(A) of the Act is the sole ground of deportability that may be waived under section 237(a)(1)(H) or that the deportability charge under section 237(a)(1)(A) must be based on section 212(a)(6)(C)(i), as the respondent's was.  *See Matter of Fu*, 23 I&N Dec. 985 (interpreting section 237(a)(1)(H) of the Act to authorize a waiver of deportability under section 237(a)(1)(A) based on charges of inadmissibility at the time of entry under section 212(a)(7)(A)(i)(I)).  *Compare Gourche v. Holder*, 663 F.3d 882, 886−87 (7th Cir. 2011) (finding that the key phrase in section 237(a)(1)(H) of the Act is "provisions of this paragraph," which refers only to grounds of deportability under section 237(a)(1)), *with Vasquez v. Holder*, 602 F.3d 1003, 1011 (9th Cir. 2010) (stating that "the fraud waiver provision does not limit its coverage to the ground of removal contained in subparagraph 237(a)(1)(A)" of the Act).

[13]  Former section 241(a)(1) of the Act provided as follows:

> Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who―
>     (1) at the time of entry was within one or more of the classes of aliens excludable by the law existing at the time of such entry . . . .

[14]  Similar to current section 212(a)(6)(C)(i) of the Act, former section 212(a)(19) provided for the exclusion of "[a]ny alien who seeks to procure, or has sought to procure,

(continued . . .)

640−41.[15]  This "section 7" waiver was available to a qualifying alien who was the spouse, parent, or child of a United States citizen or lawful permanent resident.  *Id.*  Congress provided that such an alien would be granted a visa and "admitted to the United States for permanent residence," if otherwise admissible, so long as the Attorney General consented to his applying or reapplying for a visa and admission to the United States as a matter of discretion.  *Id.*  The Supreme Court noted that the purpose of section 7 was to unite families and preserve family ties in *INS v. Errico*, 385 U.S. 214, 219−20 (1966) (citing H.R. Rep. No. 85-1199, at 7 (1957), *reprinted in* 1957 U.S.C.C.A.N. 2016, 2020, and S. Rep. No. 85-1057 (1957)).

In comparing the language of the deportability ground at former section 241(a)(1) of the Act and the section 7 exception, we note that the provisions contained corresponding language providing that an alien was deportable if he was "excludable . . . at the time of . . . entry" and that this deportation ground was waivable for aliens who were "excludable at the time of entry" on account of fraud or misrepresentation.

In 1961, Congress codified the fraud waiver provisions of section 7 at former section 241(f) of the Act, 8 U.S.C. § 1251(f) (1964), but it did not include the language regarding the Attorney General's discretion.  *See* Act of Sept. 26, 1961, Pub. L. No. 87-301, § 16, 75 Stat. 650, 655−56.  Consequently, the fraud waiver was interpreted to be available to any qualifying alien who used fraud to gain admission.  In 1981, Congress made clarifying amendments to former section 241(f) to address confusion in Board and circuit court case law.  These amendments (1) reinstated the discretionary nature of the waiver; (2) provided that it related to fraud or misrepresentation, "whether willful or innocent"; and (3) clarified that it was only intended to apply to immigrants.  *See* Immigration and Nationality

_____

or has procured a visa or other documentation, or seeks to enter the United States, by fraud, or by willfully misrepresenting a material fact."

[15]  The legislative history of the exception actually begins with the Displaced Persons Act of 1948, Pub. L. No. 80-774, 62 Stat. 1009, which allowed for the admission of war refugees from Communist countries.  The Supreme Court noted that some of these refugees misrepresented their nationality to avoid repatriation and in doing so became inadmissible to the United States under section 10 of the Displaced Persons Act based on their willful misrepresentations for the purpose of gaining admission.  *See* 62 Stat. at 1013; *INS v. Errico*, 385 U.S. 214, 218 (1966).  As a result, when the Act was enacted in 1952, committee conferees stated that it should not be interpreted to exclude or deport bona fide refugees who made misrepresentations to gain admission.  H.R. Rep. No. 82-1365, at 18, *reprinted in* 1952 U.S.C.C.A.N. 1653; *see also INS v. Errico*, 385 U.S. at 218−19.  However, because section 10 was not so applied in practice, Congress created the "section 7" waiver.

Act Amendments of 1981, Pub. L. No. 97-116, § 8, 95 Stat. 1611, 1616; *see also* H.R. Rep. No. 97-264, at 24−25 (1981), *reprinted in* 1981 U.S.C.C.A.N. 2577, 2593−94, 1981 WL 21317.

### 2. 1990 Amendments

In 1990, Congress amended the language of both the deportation ground at former section 241(a)(1) of the Act and the waiver at former section 241(f).  Immigration Act of 1990, § 602(a), Pub. L. No. 101-649, 104 Stat. 4978, 5077−79.  First, Congress created new headings, including the following for section 241(a)(1)(A): "(a) Classes of deportable aliens," "(1) Excludable at the time of entry or of *adjustment of status* or violates status," and "(A) Excludable aliens." (Emphasis added.)  In addition, the text of section 241(a)(1)(A) provided for the deportability of an alien who "at the time of entry or *adjustment of status* was within one or more of the classes of aliens excludable by the law existing at such time."  (Emphasis added.)

The waiver at former section 241(f) was repealed, and a new section 241(a)(1)(H) was added, entitled "Waiver authorized for certain misrepresentations."  §§ 602(a), (b), 104 Stat. at 5079, 5081.  The waiver applied to "the deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens described in section 212(a)(6)(C)(i)" of the Act.  Furthermore, the text of the waiver was amended to include eligibility for the sons and daughters of United States citizens and lawful permanent residents, not just those who qualified as their "children" under the Act.  *See* section 101(b)(1) of the Act (defining the term "child").

Although the amendments expanded the ground of deportability for aliens excludable based on fraud at the time of entry to include those who were excludable at the time of their adjustment of status, the related fraud waiver remained limited to aliens excludable "at the time of entry."  As a result, after the Immigration Act of 1990, certain aliens found deportable for being excludable at the time of *entry* as a result of fraud or misrepresentation could seek a waiver under former section 241(a)(1)(H), but similarly situated aliens whose fraud or misrepresentation at the time of *adjustment of status* rendered them excludable could not.

### 3. 1996 IIRIRA Amendments

In 1996, Congress replaced the definition of the term "entry" at section 101(a)(13)(A) of the Act with the terms "admission" and "admitted."  IIRIRA § 301(a), 110 Stat. at 3009-575.  Congress also redesignated section 241 as section 237 of the Act and amended the language of the

removal grounds to apply to any alien "in and admitted to" the United States who fell within one or more of the classes of deportable aliens. IIRIRA § 301(d)(1), 110 Stat. at 3009-579. Consequently, the classes of deportable aliens "in and admitted to" the United States under section 237(a) of the Act now includes those described at section 237(a)(1)(A), or "inadmissible aliens" who "at the time of entry or adjustment of status" were inadmissible by the law existing at such time. As a result, the plain language of the Act explicitly recognizes that an alien who was inadmissible at the time of adjustment is "in and admitted" to the United States and removable for purposes of section 237(a) of the Act, just like an alien "in and admitted" to the United States through entry on an immigrant visa. *See Matter of Rosas*, 22 I&N Dec. at 621−23.

With regard to the section 237(a)(1)(H) waiver, its language was modified through conforming amendments that struck the words "excludable" and "entry" and replaced them with "inadmissible" and "admission." IIRIRA § 308(d)(2)(A), (f)(1)(M), 110 Stat. at 3009-617, 3009-621. Congress left the waiver provision within section 237(a)(1) of the Act but did not modify the language of section 237(a)(1)(H) to conform to the language of section 237(a)(1)(A), which included adjustment of status. A tension therefore exists between these two provisions because an alien remains removable for being inadmissible at the time of entry or adjustment of status pursuant to section 237(a)(1) of the Act, but the waiver covers only an alien's inadmissibility at the time of admission. Given our overall statutory interpretation and case law, however, this tension does not preclude us from finding that aliens deportable for inadmissibility at the time of adjustment of status are among the aliens who are "in and admitted" to the United States and are therefore eligible for a section 237(a)(1)(H) waiver.

### C. Statutory Language and Relevant Case Law

The statutory language and relevant case law also support our conclusion that section 237(a)(1)(H) of the Act waives the ground of removal for misrepresentation at the time of adjustment of status, just as it serves to waive the same grounds of removal linked to inadmissibility arising at the time of entry on an immigrant visa.

### 1. Language of Section 237(a)(1)(H) of the Act

In 1984, we held that the former section 241(f) waiver was limited and could only be used where fraud was committed at the time of entry. *Matter of Connelly*, 19 I&N Dec. at 156. However, that waiver provision specifically applied to fraud at the time of "entry." Congress has since

amended the language of section 237(a)(1) of the Act to cover those aliens "in and admitted to" the United States, rather than those who have only entered, and it thereby shifted the focus of the waiver to apply to misrepresentation and fraud at the time of "admission."[16]

The legislative history of the IIRIRA is not specific as to why Congress replaced the word "entry" with "admission" at section 237(a)(1)(H) of the Act. However, it is clear that it amended the removal provisions as a whole to focus on "admissions" rather than "entries" and that the plain language of section 237(a) contemplates that aliens who were inadmissible at the time of adjustment of status are "in and admitted" to the United States and are therefore subject to removal under section 237(a)(1)(A) of the Act.

Additionally, Congress' purpose in enacting the waiver was to keep families united, as evidenced by the expansion of the class of aliens qualifying for the waiver to include the sons and daughters of United States citizens and lawful permanent residents. *See, e.g.*, *Matter of Federiso*, 24 I&N Dec. at 663−64. Therefore, by construing the amended language of section 237(a)(1)(H) of the Act regarding inadmissibility "at the time of admission" to include adjustment of status, we interpret the statute in keeping with Congress' humanitarian goal of preventing the separation of families. *Cf. Judulang v. Holder*, 132 S. Ct. 476, 485 (2011) (stating that agency action must be based on "relevant factors," meaning that the Board's approach must be tied to the purposes of the immigration laws or appropriate operation of the immigration system and that a method for disfavoring deportable aliens that bears no relation to an alien's fitness to remain in the country is arbitrary and capricious).

Limiting the waiver to the time of an alien's entry with an immigrant visa would lead to an incongruous application of section 237(a) of the Act. Aliens who are inadmissible at the time of entry or adjustment of status would be subject to removal as aliens "in and admitted" to the United States, but the waiver for fraud or misrepresentation at the time of admission would only apply to the alien's initial entry, when the statutory language no longer explicitly states as much. As noted, the definition of the terms "admission" and "admitted" in section 101(a)(13)(A) of the Act is not exclusive and does not adequately address the scope of the section 237(a)(1)(H) waiver within the whole of section 237(a).

---

[16] An entry under former section 101(a)(13) of the Act did not necessarily require an admission. For example, former section 241(a)(1)(B) made an alien deportable for "entry" without inspection. However, that provision of the Act was removed from the deportability grounds, included in the inadmissibility grounds at section 212(a)(6)(A)(i), and amended to state that an alien present in the United States without being admitted or paroled is inadmissible. *See* IIRIRA § 301(c)(1), 110 Stat. at 3009-578.

In decisions issued both before and after the IIRIRA, we have described an "adjustment of status [as] merely a procedural mechanism by which an alien is assimilated to the position of one seeking to enter the United States." *Matter of Rainford*, 20 I&N Dec. at 601 (citing *Matter of Connelly*, 19 I&N Dec. at 159, and *Matter of Smith*, 11 I&N Dec. 325, 326−27 (BIA 1965)); *see also Matter of Alyazji*, 25 I&N Dec. at 399. As we held in *Matter of Rosas*, 22 I&N Dec. at 619, aliens who are lawfully admitted for permanent residence through the adjustment of status process are considered to have made an "admission" to the United States. We therefore construe the phrase "at the time of admission" in section 237(a)(1)(H) of the Act to include adjustment of status from within the United States.

### 2. Adjustment of Status as an Admission in Other Contexts

Our holding comports with the well-established understanding that adjustment of status constitutes an admission, as the term is used in certain other parts of the Act. Additionally, we have recognized in certain instances that an alien who has adjusted status to that of a lawful permanent resident has been admitted to the United States. Specifically, we rely on our prior decisions as underscoring the fact that an admission may include adjustment of status in the United States depending on the context in which the term is used, because many of our cases have found that section 101(a)(13)(A) of the Act does not provide the exclusive definition for an admission.

An example is *Matter of Chavez-Alvarez*, 26 I&N Dec. 274 (BIA 2014), in which we reaffirmed *Matter of Rosas*, 22 I&N Dec. 616. In each case, the alien initially entered the United States without inspection and later adjusted status to that of a lawful permanent resident. And in both we held that an alien who was convicted of an aggravated felony after he adjusted to lawful permanent resident status was subject to removal under section 237(a)(2)(A)(iii) of the Act as having been convicted of an aggravated felony "at any time after admission."[17]

In *Rosas*, we noted that adjustment of status does not meet the literal definition of "admission" or "admitted" under section 101(a)(13)(A) of the Act because it is unclear that a change in status can be characterized as an "entry" into the United States. *Matter of Rosas*, 22 I&N Dec. at 617−18; *accord Matter of Chavez-Alvarez*, 26 I&N Dec. at 276. However, we found that section 101(a)(13)(A) does not adequately address the intended scope of the term "admitted" as it is used at section 237(a)(2)(A)(iii) and that the

---

[17] Section 237(a)(2)(A)(iii) of the Act provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable."

respondent had accomplished an admission after entry as an alien lawfully admitted for permanent residence under section 101(a)(20). *Matter of Rosas*, 22 I&N Dec. at 619, 623.

In reaching this conclusion, we relied on the language in the adjustment provisions and section 101(a)(13)(C), which states the circumstances under which a lawful permanent resident is regarded as seeking admission to the United States.[18]  *Id.* at 618−20.  The Ninth Circuit has also held that adjustment of status is an admission in the context of the removability provision at section 237(a)(2)(A)(iii) of the Act.  *See Ocampo-Duran v. Ashcroft*, 254 F.3d 1133.[19]

With regard to deportability for a conviction of a crime involving moral turpitude within 5 year after the date of "admission" under section 237(a)(2)(A)(i) of the Act,[20] we stated in *Matter of Alyazji*, 25 I&N Dec. at 399, that there are two groups of aliens "in and admitted" to the United States under section 237(a) of the Act: (1) those who entered the United States with permission after inspection and (2) those who entered the United States without inspection or were paroled, but who subsequently became lawful permanent residents.  *See also Matter of Paek*, 26 I&N Dec. 403 (BIA 2014).  We acknowledged that members of the second group may never have been admitted within the plain language of section 101(a)(13)(A) of the Act but that an alien who obtains permanent resident

---

[18]  We also observed that if we did not read the term "admitted" more broadly to include aliens who adjusted status after having entered without inspection, they would be inadmissible under section 212(a)(6)(A)(i) of the Act, which the IIRIRA does not appear to have intended because it would render them ineligible for certain forms of relief that are generally available to lawful permanent residents.  *Matter of Rosas*, 22 I&N Dec. at 621, 623.  However, *Rosas* does not stand for the proposition that adjustment of status should only be considered an admission when the results would otherwise be absurd.  The potential for absurd results was noted in support of our interpretation of the statute in that case.

[19]  *Ocampo-Duran* did not address *Matter of Rosas*, but the Ninth Circuit has cited our decision favorably in other cases.  *See, e.g.*, *Guevara v. Holder*, 649 F.3d 1086, 1090 (9th Cir. 2011); *Vasquez de Alcantar v. Holder*, 645 F.3d 1097, 1101 (9th Cir. 2011).

[20]  Section 237(a)(2)(A)(i) of the Act provides as follows:

> Any alien who—
>    (I) is convicted of a crime involving moral turpitude committed within five years (or 10 years in the case of an alien provided lawful permanent resident status under section 245(j) of this title) after the date of admission, and
>    (II) is convicted of a crime for which a sentence of one year or longer may be imposed,
> is deportable.

status from within the United States is assimilated to the same status as an alien admitted at the border with an immigrant visa. *Matter of Alyazji*, 25 I&N Dec. at 399; *see also Matter of Espinosa Guillot*, 25 I&N Dec. 653, 654−56 (BIA 2011).

As for which date of "admission" should be applied in calculating whether the conviction occurred within the relevant 5-year period, we concluded that the date comes from the admission "by virtue of which the alien was present in the United States" when the offense was committed. *Matter of Alyazji*, 25 I&N Dec. at 406. In so finding, we overruled, in part, *Matter of Shanu*, 23 I&N Dec. 754 (BIA 2005), *vacated sub nom. Aremu v. Department of Homeland Security*, 450 F.3d 578 (4th Cir. 2006), which held that the date resets each time an alien is admitted to the United States. We determined that *Shanu* focused too much on historical practice and that the grammatical structure of section 237(a)(2)(A)(i) of the Act had changed. *Matter of Alyazji*, 25 I&N Dec. at 404−05.

Specifically, we found that the phrase "within five years after the date of admission" was one specific time "after entry," such that the current text had been narrowed to connote a single date tethered to a pertinent offense. *Id.* at 405. Consequently, we reasoned that the date the 5-year period begins depends on whether the alien was already admitted and had not left the country prior to adjustment before commission of the crime. *Id.* at 406−08. We therefore concluded that although the respondent adjusted status in 2006 and committed his offense in 2007, he was not deportable because he was "admitted" to the United States as a nonimmigrant in 2001 without leaving. *Id.* at 408.

In *Matter of Alyazji*, we found that there was one relevant date of admission for purposes of section 237(a)(2)(A)(i)(I) of the Act. However, we have not altered our holding in *Matter of Rosas* to the extent that we found that aliens who adjust status from within the United States after entering without inspection are "admitted" for purposes of section 237(a) of the Act. *Cf. Matter of Chavez-Alvarez*, 26 I&N Dec. at 278 (stating that if adjustment of status is not treated as an admission, aliens convicted of an aggravated felony would not be subject to removal because they could not be alternatively charged under section 212(a) of the Act since lawful permanent resident aliens are not seeking admission).

### D. Other Eligibility Considerations

Generally, to qualify for a section 237(a)(1)(H) waiver, an alien must not only be inadmissible to the United States at the time of admission but must also demonstrate that the inadmissibility is linked to fraud or misrepresentation, whether willful or innocent. In addition, the applicant must be the spouse, parent, son, or daughter of a United States citizen or

lawful permanent resident. Section 237(a)(1)(H)(i)(I) of the Act. The applicant must also have been in possession of an immigrant visa or equivalent document at the time the inadmissibility arose and, but for the fraud or misrepresentation, be otherwise admissible. Section 237(a)(1)(H)(i)(II) of the Act. Finally, the applicant must demonstrate that he or she merits relief in the exercise of discretion.

We have determined that a respondent's adjustment of status can be an admission for purposes of the 237(a)(1)(H) waiver. Where an alien adjusts status from within the United States under section 245 of the Act, no immigrant visa is issued or required. However, the alien must be eligible to receive an immigrant visa and have one immediately available at the time the adjustment application is filed. *See* 8 C.F.R. § 1245.1(a) (stating the eligibility requirements for adjustment of aliens physically present within the United States). In 2002, the respondent adjusted her status as the wife of a United States citizen and was issued a Permanent Resident Card (Form I-551) reflecting that she was eligible to receive an immigrant visa and had one immediately available to her when she filed for this benefit. Accordingly, she was in possession of a document that is equivalent to an immigrant visa.

However, because the Immigration Judge found that a waiver under section 237(a)(1)(H) was unavailable to the respondent, he did not determine whether she was otherwise eligible for the waiver. He did not make factual and other findings necessary to determine the nature of the fraud or misrepresentation. For example, given the fact that the DHS withdrew its factual allegation that the respondent committed fraud in the course of obtaining her initial adjustment to permanent resident status, what is the effect of her concession to the charge that she was inadmissible at the time of her adjustment? Was the respondent's admission to the submission of a fraudulent lease intended to acknowledge fraud at the time of adjustment of status? Further proceedings with regard to this issue and the question whether the respondent is otherwise admissible may be required on remand.

We note in particular that since the DHS no longer opposes the respondent's position that she is statutorily eligible to seek to waive the consequences of fraud at the time of procuring adjustment of status, the Immigration Judge should require the DHS to clarify its allegations with regard to the respondent's removability on remand. If the Immigration Judge concludes that the record indicates that the respondent has committed fraud in the course of securing her adjustment of status, and that she is otherwise admissible, the Immigration Judge should render factual and other findings necessary to decide whether she merits relief in the exercise of discretion. Making a discretionary determination requires a balancing of the respondent's undesirability as a permanent resident with social and

humane considerations to assess whether a grant of relief is in the best interests of the country. *Matter of Tijam*, 22 I&N Dec. 408, 412−13 (BIA 1998) (discussing the adverse and favorable factors to be balanced in evaluating discretion under section 237(a)(1)(H) of the Act); *see also Virk v. INS*, 295 F.3d 1055, 1060 (9th Cir. 2002) (assessing factors weighed in regard to a waiver under former section 241(f) of the Act).

We will therefore remand the record for the Immigration Judge to make the necessary findings and to determine whether the respondent's application for a waiver of inadmissibility should be granted in the exercise of discretion. Accordingly, the respondent's appeal will be sustained and the record will be remanded.

**ORDER:** The appeal is sustained.

**FURTHER ORDER:** The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.

## *DISSENTING OPINION:* Roger A. Pauley, Board Member

I would affirm the Immigration Judge. As the majority opinion observes, it was settled law, both under Federal court of appeals decisions (including in the United States Court of Appeals for the Ninth Circuit, in which this case arises) and Board precedent, that the predecessor statute to section 237(a)(1)(H) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(1)(H) (2012), namely, former section 241(f) of the Act, 8 U.S.C. § 1251(f) (1964), did not allow a waiver for fraud committed during adjustment of status but only applied to waive fraud at the time of entry. *E.g.*, *Khadjenouri v. INS*, 460 F.2d 461 (9th Cir. 1972); *Pereira-Barbeira v. U.S. Dep't of Justice, INS*, 523 F.2d 503 (2d Cir. 1975); *Matter of Connelly*, 19 I&N Dec. 156 (BIA 1984). Nothing in the 1981 and 1990 amendments to the Act discussed in *Matter of Fu*, 23 I&N Dec. 985, 987−88 (BIA 2006), which recodified section 241(f) as section 237(a)(1)(H) with certain changes, reflects an intent by Congress to broaden the scope of the waiver so as to apply to fraud occurring in the adjustment of status context.[1]

The majority seize upon the change in language from "entry" to "admission" in the introductory language in section 237(a)(1), which

---

[1] Indeed, in *Matter of Fu* we reviewed the legislative history attendant to the 1981 amendments to former section 241(f) of the Act. There, we stated that "section 237(a)(1)(H) is best interpreted as authorizing a waiver of removability under section 237(a)(1)(A) based on charges of inadmissibility *at the time of entry*." *Matter of Fu*, 23 I&N Dec. at 988 (emphasis added).

applies to all the subparagraphs thereof, and then rely on some of our recent precedent decisions to find that an adjustment of status is an "admission." They therefore conclude that the section 237(a)(1)(H) waiver has been transformed and broadened to embrace, not only fraud at the time of entry, but also fraud at the time of adjustment.

I cannot agree. Whatever the policy arguments for such an expansion, the change in language from "entry" to "admission" appears to be merely a conforming amendment, not one intended by Congress to have the substantive effect found by the majority. *See* Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Div. C of Pub. L. No. 104-208, § 308(f)(1)(M), 110 Stat. 3009-546, 3009-614, 3009-621 (inserting "admission" in place of "entry" in former section 241(a)(1)(H) under a section entitled, in part, "additional conforming amendments"); *see also Matter of Quilantan*, 25 I&N Dec. 285 (BIA 2010) (similarly rejecting a claim that changes wrought by the IIRIRA were intended to, or had the effect of, altering the Board's longstanding view that "admission" required only procedural, not substantive, regularity).

The majority's reading of the language in section 237(a)(1)(H) permitting a fraud waiver "on the ground that [an alien was] inadmissible at the time of admission" is supportable only if the phrase "the time of admission" is construed to include adjustment of status. We have determined that there are instances where not deeming adjustment of status to be an admission leads to absurd or bizarre consequences, and we have accordingly found an adjustment of status to be such. *E.g.*, *Matter of Chavez-Alvarez*, 26 I&N Dec. 274 (BIA 2014). But there is clearly no absurdity that results from giving the definition of "admission" its plain and natural meaning (that is, requiring an *entry* after inspection) if section 237(a)(1)(H) is still interpreted to permit a fraud waiver only for fraud committed at the time of entry rather than adjustment of status. Such a limitation was indeed the law under *Matter of Connelly* and like cases for many years and was never found to result in bizarre or absurd consequences or to produce results so inequitable as to violate due process.

It is true that the Board has sometimes treated an adjustment of status as an "admission." But we have never declared that an adjustment of status is *always* to be so construed. And there is good reason not do so here because there is no indication that Congress intended to overturn our prior construction of the waiver, and that of the courts of appeals, as limited to fraud at the time of entry. Congress could easily have included a reference to adjustment of status in the definition of an "admission" in section 101(a)(13)(A) of the Act, 8 U.S.C. § 1101(a)(13)(A) (2012). The absence of any such reference, together with the absence of any absurdity resulting from application of the actual definition Congress did employ in the context of section 237(a)(1)(H), should dictate an affirmance of the

Immigration Judge's decision. In fact, another instance where Congress has noted that admission and adjustment of status are not the same can be found in section 212(h)(2) of the Act, 8 U.S.C. § 1182(h)(2) (2012), where Congress provided for a waiver where the Attorney General has "consented to the alien's applying or reapplying . . . for admission to the United States, *or adjustment of status*."

Moreover, even assuming that the respondent's adjustment of status in 1988 following her admission as a nonimmigrant in 1986 was a further "admission," the majority's holding is at odds with *Matter of Alyazji*, 25 I&N Dec. 397 (BIA 2011). In that decision, we construed the language in section 237(a)(2)(A)(i) of the Act, relating to crimes of moral turpitude committed within 5 years after "*the* date of admission," to refer to only one date, namely *the* date pursuant to which the alien was in the United States. The language in section 237(a)(1)(H) is comparable, referring to waivers of certain grounds of inadmissibility for aliens who "were inadmissible at *the* time of admission." The majority's decision fails to explain, in light of *Alyazji*, why it is appropriate to treat this language as encompassing multiple dates of admission where, prior to her adjustment of status, the respondent was already admitted and remained in the country pursuant thereto.[2] I therefore respectfully dissent.

---

[2] There is no occasion to opine on the proper result in a case where an alien had never been admitted prior to obtaining adjustment of status within the United States.