[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 17-12521 & 18-10010

_____

Agency No. A093-392-349

EDUARDO ARIEL GOMEZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petitions for Review of a Decision of the
Board of Immigration Appeals

_____

(August 1, 2019)

Before MARCUS, GRANT, and HULL, Circuit Judges.

PER CURIAM:

Eduardo Gomez came to the United States as part of a program that allows certain foreigners to visit without a visa.  In exchange for that convenience, program participants cannot challenge the government's efforts to remove them from this country.  Nor can they adjust their nonimmigrant visitor status to that of a legal permanent resident—except in narrow circumstances.  Gomez invoked one of those exceptions and succeeded in gaining permanent resident status.  But he did so through fraud by using a fake Cuban birth certificate.  When the Department of Homeland Security (DHS) sought to remove Gomez based on that fraudulent status adjustment, he admitted the charge—but he also applied for a fraud waiver, which the Board of Immigration Appeals (BIA) denied.  And when Gomez moved to reopen his proceedings, the agency rejected that request as well, citing the fact that at entry Gomez had waived his right to challenge his removal.  But in so doing, the agency failed to consider whether that entry waiver continued to apply after Gomez successfully—albeit fraudulently—became a permanent resident.  We therefore vacate the BIA's order denying Gomez's motion to reopen and remand for further proceedings.

I.

A.

Gomez, a native and citizen of Argentina, entered the United States as a nonimmigrant tourist in 2002.  He came through the Department of State's Visa

2

Waiver Program (VWP), which allows foreign citizens from certain countries to visit the United States for 90 days without obtaining a visa, pursuant to section 217 of the Immigration and Nationality Act (INA).  *See* INA § 217(a), 8 U.S.C. § 1187(a).  Notably, that expedience comes with some tradeoffs.  For one thing, VWP participants must waive any right "to contest, other than on the basis of an application for asylum, any action for removal," which is known as the "VWP waiver."  INA § 217(b)(2), 8 U.S.C. § 1187(b)(2).  And on top of that, section 245(c) of the INA generally precludes an alien who was admitted under the VWP from adjusting his status from that of a nonimmigrant visitor to that of a lawful permanent resident.  *See* INA § 245(c)(4), 8 U.S.C. § 1255(c)(4).

There are, however, a few exceptions.  As relevant here, the Cuban Adjustment Act allows certain nonimmigrant visitors—including VWP entrants— to adjust their status "notwithstanding the provisions of section 245(c) of the [INA]."  Pub. L. No. 89–732, § 1, 80 Stat. 1161 (1966).  But as the name of the Cuban Adjustment Act might suggest, this exemption applies only to "a native or citizen of Cuba."  *Id.*  Which is another way of saying that it does not cover Gomez—who, again, hales from Argentina.  He nevertheless invoked this exception and applied for permanent resident status using a fake Cuban birth certificate.  And it worked: the government granted Gomez permanent resident status in 2009.

B.

A few years later, DHS caught on and charged Gomez with removability based on his fraudulent status adjustment.  The agency did not, however, charge him with overstaying his 90-day visit under the VWP.  That matters because when the government seeks to remove VWP entrants for overstaying their visit, it can do so "without referral of the alien to an immigration judge for a determination of deportability."  8 C.F.R. § 217.4(b)(1).  Here, by contrast, DHS sought to remove Gomez based on his fraud, and so it placed him in plenary removal proceedings before an Immigration Judge (IJ).  Gomez admitted the fraud charge, but sought discretionary relief—known as a "fraud waiver"—under section 237(a)(1)(H) of the INA.  That provision allows the Attorney General to waive removal for an alien who gained admission via fraud, so long as the alien meets certain requirements.  *See* INA § 237(a)(1)(H), 8 U.S.C. § 1227(a)(1)(H).

Gomez made it clear that he sought a fraud waiver—and only a fraud waiver—throughout his removal proceedings.  When the IJ initially asked about the "form of relief he's seeking," Gomez's attorney replied, "a 237(a)(1)(H) waiver."  And when the IJ later asked how Gomez was "seeking to adjust" his status, counsel replied that "[h]e's not" and that the only issue on the table was "the 237(a)(1)(H) waiver."  Nonetheless, the IJ proceeded to terminate Gomez's permanent resident status and then construed his fraud waiver request as a new

4

application for *adjustment of status*.  As a result, the IJ ordered Gomez's removal based on her finding that Gomez "is not eligible to seek adjustment of status"— without addressing his request for a fraud waiver.

On appeal, the BIA tried to fix the issue by addressing both the phantom request for adjustment of status and the real request for a fraud waiver.  Yet Gomez fared no better, and the agency denied both requests.  In rejecting his bid for a fraud waiver, the BIA noted that Gomez had "never been 'admitted'" to the United States and thus "is not statutorily eligible" for a fraud waiver under section 237(a)(1)(H).  That provision only applies to individuals who committed fraud "at the time of admission."  INA § 237(a)(1)(H), 8 U.S.C. § 1227(a)(1)(H).  What's more, the BIA found that Gomez failed to explain how "he is not subject to the limitations set forth" in the VWP statute—specifically, the provision requiring VWP entrants to waive any right to contest their removal.  The agency concluded that "[n]one of the limited exceptions allowing VWP entrants to qualify for immigration benefits extends to the forms of relief" sought by Gomez.

Gomez did not file a petition for review of that BIA decision, which also concluded that the IJ had not erred in terminating lawful permanent resident status for Gomez.[1]  Instead, he filed a motion to reopen his removal proceedings based on

---

[1]The BIA's April 28, 2016 decision thus became final and constitutes the final removal order that Gomez seeks to reopen and contest based on the fraud waiver.  *See Dorelien v. U.S. Att'y Gen.*, 317 F.3d 1314, 1319 n.12 (noting that the BIA's affirmance of an IJ's order of

what he deemed "intervening precedent"—namely, the BIA's decision in *Matter of Agour*, 26 I. & N. Dec. 566 (BIA 2015).  In *Agour*, the BIA held that "an alien's adjustment of status . . . constitutes an admission for purposes" of fraud waiver eligibility.  *Id.* at 570.  Put another way, *Agour* says that the fraud waiver provision covers both 1) aliens who committed fraud when they entered the country, and 2) aliens who committed fraud when they adjusted their status.  *See id.*  The BIA, however, declined to reopen his removal proceedings, reasoning that—even if Gomez had been "admitted" for purposes of the fraud waiver provision—he still was not "eligible for immigration benefits as a VWP entrant."  Gomez did not file a petition for review of this BIA order either.

A few months later, Gomez filed a second motion to reopen with the help of a different attorney.  This time, Gomez argued that his former lawyer provided ineffective assistance of counsel by failing to file certain briefs and bungling important legal arguments.  But the BIA denied this motion as "time-barred and number-barred."  Under the INA, "an alien generally may file only one motion to reopen, and must do so no later than 90 days after the final order of removal." *Avila-Santoyo v. U.S. Att'y Gen.*, 713 F.3d 1357, 1358 (11th Cir. 2013) (en banc)

removal "is treated as a final order of removal").  Gomez has not sought to reopen or contest the termination of his lawful permanent resident status.

6

(per curiam).  Gomez's second motion to reopen failed to comply with both the filing deadline and the filing limit—it was too late and one too many.

Gomez argued that the BIA should "equitably toll"—in other words, relax—those filing restrictions, considering his prior attorney's allegedly deficient performance.  For its part, the BIA assumed that equitable tolling could apply but found that it was not warranted here.  In the agency's view, Gomez would not have qualified for a fraud waiver regardless of his attorney's performance; he did not suffer any prejudice that would justify equitable tolling.  The BIA reasoned that Gomez, as a VWP entrant, "expressly waived any right to apply for most immigration benefits, including adjustment of status."  Moreover, according to the BIA, Gomez's application for permanent resident status "was acted upon only due to administrative inadvertence or error," and thus did not count as "an 'admission' to the United States."  Gomez moved for reconsideration, which the BIA also denied.

Gomez now petitions this Court for review of the BIA's order denying his second motion to reopen and its order denying his motion for reconsideration.

## II.

This Court reviews the BIA's denial of a motion to reopen removal proceedings "for abuse of discretion," which we have described as "quite broad." *Gbaya v. U.S. Att'y Gen.*, 342 F.3d 1219, 1220 (11th Cir. 2003) (per curiam)

(citation omitted).  The agency enjoys a lot of latitude in "this particular area," *id.*, because of the heightened potential for strategic abuse: "as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States."  *INS v. Doherty*, 502 U.S. 314, 323 (1992).  For that reason, "motions to reopen are disfavored" and the "moving party bears a heavy burden." *Zhang v. U.S. Att'y. Gen.*, 572 F.3d 1316, 1319 (11th Cir. 2009); *see also Jiang v. U.S. Att'y Gen.*, 568 F.3d 1252, 1256 (11th Cir. 2009) ("Motions to reopen in removal proceedings are particularly disfavored.").

Still, the "BIA abuses its discretion when it misapplies the law in reaching its decision."  *Ferreira v. U.S. Att'y Gen.*, 714 F.3d 1240, 1243 (11th Cir. 2013). And when it comes to "claims of legal error"—that is, "challenges to the legal reasoning offered by the BIA"—we review the agency's conclusions de novo.  *Lin v. U.S. Att'y Gen.*, 881 F.3d 860, 871, 872 (11th Cir. 2018); *see also Li v. U.S. Att'y Gen.*, 488 F.3d 1371, 1374 (11th Cir. 2007) ("To the extent that the decision of the Board was based on a legal determination, our review is *de novo*."). Moreover, when the BIA "has not applied the law" to the relevant facts, "appellate courts should remand" so that the agency can make that determination in the first place.  *Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1236 (11th Cir. 2007); *see also Lin*, 881 F.3d at 874 ("Where the BIA has not given 'reasoned consideration' of a question or made 'adequate findings,' we remand for further

8

proceedings." (quoting *Gaksakuman v. U.S. Att'y Gen.*, 767 F.3d 1164, 1168 (11th Cir. 2014))).

## III.

The BIA denied Gomez's second motion to reopen based on incomplete legal reasoning.  The agency hinged its decision on section 217(b)(2), stating that, "[a]s a VWP entrant," Gomez "expressly waived any right to apply for most immigration benefits, including adjustment of status."  But as support for that conclusion, the BIA relied on its April 28, 2016 order affirming Gomez's removal, which in turn relied on *Matter of D-C-M-P-*, 26 I. & N. Dec. 644 (BIA 2015).  And that decision merely repeated the general proposition that VWP entrants waive any right to contest their removal.  *See Matter of D-C-M-P-*, 26 I. & N. Dec. at 647. True, that decision also cited several cases from our sister circuits holding that VWP entrants cannot sidestep this waiver by *applying* for adjustment of status after overstaying their visit.  *See, e.g.*, *McCarthy v. Mukasey*, 555 F.3d 459, 462 (5th Cir. 2009) (per curiam); *Bayo v. Napolitano*, 593 F.3d 495, 507 (7th Cir. 2010) (en banc); *Bradley v. U.S. Att'y Gen.*, 603 F.3d 235, 242–43 (3d Cir. 2010); *Bingham v. Holder*, 637 F.3d 1040, 1047 (9th Cir. 2011).  But all of those cases still differ from this one in a critical respect: they involved VWP entrants who had

9

not yet adjusted their status by the time that the government sought to remove them.

The BIA thus failed to grapple with the fact that Gomez had already adjusted to permanent resident status. As the government's Notice to Appear points out, Gomez "adjusted [his] status to that of a Lawful Permanent Resident on July 1, 2009." And as the IJ acknowledged, Gomez "entered the United States initially on the visa waiver program," but later "adjusted status under the Cuban Adjustment Act." The relevant question, therefore, is not whether Gomez initially waived his right to challenge his removal as a VWP entrant. Rather, it is whether that VWP waiver *continued to apply* after he successfully—albeit fraudulently—adjusted his status. That question needs to be answered before it can be determined whether Gomez is otherwise eligible for a fraud waiver. We therefore remand to the BIA for it to consider this threshold legal issue in the first instance.

To be sure, if Gomez had *not* adjusted his status, the VWP's bar on challenging removal would likely still apply. *See, e.g.*, *McCarthy*, 555 F.3d at 462; *Bayo*, 593 F.3d at 507; *Bradley*, 603 F.3d at 242–43; *Bingham*, 637 F.3d at 1047. Indeed, the government ordinarily can remove a VWP overstay "without referral" to an IJ, precluding the alien from seeking a fraud waiver—or any other form of relief besides asylum. 8 C.F.R. § 217.4(b)(1). If Gomez had remained a nonimmigrant visitor under the VWP, DHS could have "promptly processed his

10

removal without a hearing, as it normally would with any legitimate VWP participant who overstays his visit." *Bayo*, 593 F.3d at 498.  But the fact remains that Gomez had adjusted to permanent resident status, an issue that the BIA failed to address.

Finally, we address the BIA's independent conclusion that Gomez is not eligible for a fraud waiver because his status adjustment was obtained "only due to administrative inadvertence or error," and therefore "was not an 'admission' to the United States," as required by the fraud waiver statute.  As support, the agency cited this Court's decision in *Savoury v. U.S. Att'y Gen.*, 449 F.3d 1307 (11th Cir. 2006).  But there, we analyzed a different waiver provision, section 212 of the INA, which expressly restricted relief to aliens who had been "*lawfully* admitted for permanent residence."  *Id.* at 1312 (emphasis added).  Because the alien in that case only obtained admission due to administrative error, it could not be said that he had been lawfully admitted.  *See id.* at 1317.  The fraud waiver provision at issue here, by contrast, does not require a lawful admission.  *See* INA § 237(a)(1)(H), 8 U.S.C. § 1227(a)(1)(H).  Indeed, the whole point of the provision is to grant waivers to aliens who gained admission via fraud—that is, aliens who were *unlawfully* admitted.

11

IV.

On remand, the BIA should address whether the VWP's bar in section 217(b)(2) on challenging removal continues to apply to Gomez in light of his prior status adjustment under the circumstances of the case. If the VWP's bar applies, that ends the matter. If the bar does not apply, the agency should then consider whether Gomez is otherwise eligible to seek a fraud waiver under section 237(a)(1)(H). In that regard, the agency should consider whether he satisfies the five requirements for eligibility under the principles laid down in *Matter of Agour*. At that point, the agency can assess whether Gomez has established ineffective assistance of counsel, such that it warrants tolling his time and number barred second motion to reopen his removal proceedings.

Accordingly, we grant Gomez's petition, vacate the BIA's order denying his second motion to reopen, and remand to the BIA for further proceedings consistent with this opinion.

**PETITION GRANTED; VACATED and REMANDED.**